Argued and submitted December 31, 2020, resubmitted en banc June 9; jurisdictional judgment affirmed, dispositional judgment affirmed in part, reversed and remanded in part September 29, 2021

In the Matter of R. M. T.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

W. C. T.
and L. M., aka L. K. M.,
*Appellants.*

Grant County Circuit Court
20JU02201;
A174195 (Control), A174197

501 P3d 44

In consolidated appeals, mother and father appeal judgments of jurisdiction and disposition. The juvenile court took jurisdiction over parents' daughter and directed parents to cooperate in the plan for reunification. Mother and father assert ten assignments of error in the decision to take dependency jurisdiction. Both parents assign error to the court's order that they participate in psychological evaluations, arguing that a line of cases relying on ORS 419B.337(2) as authority for such evaluations should be overruled as plainly wrong and that under their preferred statutory authority, ORS 419B.387, the juvenile court failed to justify psychological exams as a component of treatment or training by tying the exams to substance abuse. In addition, mother assigns error to the court's order that she engage in consistent visitation, obtain safe and stable housing, sign information releases, and complete a "protective capacity assessment." *Held*: The line of cases relying on ORS 419B.337(2) and ORS 419B.343(1)(a) as authority for the juvenile court to order parent participation in psychological evaluations was not plainly wrong and could be harmonized with recent cases involving ORS 419B.387. After an evidentiary hearing, a juvenile court may order a psychological evaluation when finding that (a) the evaluation is rationally related to the jurisdictional findings, (b) it serves as a predicate component to the determination of treatment and training, (c) there is a need for treatment or training to ameliorate the jurisdictional findings or to facilitate the child's return, and (d) the parent's participation in needed treatment or training is in the best interests of the child. The Court of Appeals affirmed the jurisdictional judgment and affirmed the dispositional judgment as to mother. However, the court agreed with father that the juvenile court erred in directing him to participate in a psychological evaluation and reversed and remanded that part of the dispositional judgment.

Jurisdictional judgment affirmed; dispositional judgment affirmed in part, reversed and remanded in part.

En Banc

W. D. Cramer, Jr., Judge.

Sarah Peterson, Deputy Public Defender, argued the cause for appellant L. M. Also on the briefs was Shannon Storey, Chief Defender, Juvenile Appellate Section, Office of Public Defense Services.

Aron Perez-Selsky filed the brief for appellant W. C. T.

Inge D. Wells argued the cause for respondent. On the brief were Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Jon Zunkel-deCoursey, Assistant Attorney General.

Before Egan, Chief Judge, and Armstrong, Ortega, DeVore, Lagesen, Tookey, DeHoog, Shorr, James, Aoyagi, Powers, Mooney, and Kamins, Judges.

DeVORE, J.

Jurisdictional judgment affirmed; dispositional judgment affirmed in part, reversed and remanded in part.

DeVore, J., filed the opinion of the court in which Armstrong, Tookey, DeHoog, Shorr, Powers, and Kamins, JJ., joined.

Mooney, J., concurred in part and dissented in part and filed an opinion in which Egan, C.J., Ortega, Lagesen, James, and Aoyagi, JJ., joined.

**DeVORE, J.**

In consolidated appeals, mother and father appeal judgments of jurisdiction and disposition. The juvenile court took jurisdiction over parents' daughter, R, and directed parents to cooperate in the plan for reunification. Mother and father assert 10 assignments of error in the decision to take dependency jurisdiction. Both parents assign error to the court's order that they participate in psychological evaluations and urge that one of two lines of authority for such evaluations should be overruled as plainly wrong. In addition, mother assigns error to the court's order that she engage in consistent visitation, obtain safe and stable housing, sign information releases, and complete a "protective capacity assessment."

We have differing opinions whether to overrule or harmonize our cases. A concurring and dissenting opinion would overrule, while this majority opinion harmonizes cases, encouraged by the doctrine of *stare decisis*. We hold that, after an evidentiary hearing, a juvenile court may order a psychological evaluation when finding that (a) the evaluation is rationally related to the jurisdictional findings, (b) it serves as a predicate component to the determination of treatment and training, (c) there is a need for treatment or training to ameliorate the jurisdictional findings or to facilitate the child's return, and (d) the parent's participation in needed treatment or training is in the best interests of the child. We affirm the jurisdictional judgment, and we affirm the dispositional judgment as to mother. However, we agree with father that the juvenile court erred in directing him to participate in a psychological evaluation, and we reverse and remand that part of the dispositional judgment.

## I. FACTS

We review the juvenile court's factual findings for any evidence and its legal conclusions for errors of law. *Dept. of Human Services v. A. F.*, 295 Or App 69, 71, 433 P3d 459 (2018).

Mother gave birth to R two months prematurely in August 2009. R suffered continuous developmental delays. When she entered kindergarten in 2014, R was "very far

behind." A learning disability necessitated an individual-ized education plan (IEP). She has an IQ of 69 and is clas-sified as intellectually disabled. At the time of trial in late May and early June 2020, R was 10 years old and in the fourth grade, but her writing and math skills were around a first-grade level. In January 2020, the school had updated R's IEP, but neither mother nor father participated. Mother did not respond to the school's invitation, and the school did not know father was in R's life. Her special education teacher testified that R was often tired and had difficulty focusing or engaging. Mother believed that R suffered from sleep apnea. The teacher, who had never met mother, testified that, when a parent is not engaged, the children struggle with academic, social, emotional, and insecurity issues.

The juvenile court previously took jurisdiction as to R in 2014 on the admitted allegations of the Department of Human Services (DHS) as to each parent's history of substance abuse, father's criminal history, father's impul-sive behavior, and mother's allowing a person with violent behavior to have unsupervised contact with R. After mother engaged in a treatment program, the court returned R to mother in February 2016.

In 2018 and 2019, Frost, a DHS employee, attempted to visit mother. Mother refused to provide urine samples and refused to allow Frost access to her home. Frost left her business card three or four times, and she left telephone voice-messages, but the calls were not returned.

In summer 2019, R and her parents lived in a "super tiny" trailer. Father moved out, and mother's adult daughter C and C's child (mother's granddaughter), moved in. Before he moved out, father lived in the trailer much of the time, and, after moving, father visited R at the trailer several mornings each week. In January 2020, mother was evicted from the trailer for failure to pay the rent. Mother, R, adult daughter C, and C's child moved into a motel where a com-munity organization paid the bill for six weeks, but mother had no plan where to stay when the money ran out. Father lived in a different camping trailer, caring for his 91-year-old father nearby. The trailer lacked water or a toilet. Father

said it was an arrangement that was "not a place for [R]" and that he could not provide care for her.

Mother suffers from primary progressive multiple sclerosis and requires a wheelchair. She has had an ileostomy and has an ostomy bag. Her sources of income are disability payments of $1,200 per month, supplemented with food stamps. Mother admitted she used some of the money to pay for drugs. She testified that in July 2019 she began using methamphetamine again, reportedly once or twice a month. Mother also smoked marijuana to alleviate pain in her legs. Her daughter, C, used methamphetamine while living with mother, although not in her presence. At trial, mother testified that she is addicted to methamphetamine and would benefit from treatment.

In April 2020, DHS removed R from mother's care and filed a dependency petition. Mother submitted to a mental health evaluation. The evaluator, Campos, observed that mother had characteristics associated with personality disorders but that mother did not meet the criteria for a diagnosis of a particular personality disorder. Campos recommended that mother engage in individual therapy and submit to a substance use disorder evaluation.

A mental health professional diagnosed R with adjustment disorder with anxiety, stemming from stress caused by unstable living circumstances. The professional testified that R needs to feel safe and secure and have a daily structure and routine.

At the close of evidence, the attorneys for the parents disputed that the evidence on the allegations sufficed to show a present risk to R. DHS and counsel for R argued to the contrary. The juvenile court was persuaded by the evidence to take dependency jurisdiction. The court determined:

"A. The child is in need of structure and supervision that the mother is not providing.

"B. The child has social functioning and developmental problems that require structure, supervision, and treatment that the mother is not providing.

"C. The child has failed to achieve appropriate developmental, educational, and social progress while in the

mother's care and the mother is not providing the care and treatment necessary to address the child's condition.

"E.   The mother's chaotic lifestyle interferes with her ability to safely parent the child.

"H.   The mother does not understand the basic needs of her child and lacks skills necessary to safely parent the child.

"I.   Despite having participated in services designed to improve the mother's parenting skills and substance abuse problems, she is unable to safely parent the child[.]

"J.   The mother is unable to, is unwilling to, cannot provide for the educational needs of the child[.]

"K.   The mother's substance abuse interferes with her ability to safely parent the child.

"M.   The child is in need of structure and supervision that the father is unable to provide.

"N.   The child has social functioning and developmental problems that require structure, supervision, and treatment that the father is unable to provide.

"O.   The child has failed to achieve appropriate developmental, educational, and social progress and the father is unable to provide the care and treatment necessary to address the child's condition.

"P.   The father lacks the parenting skills necessary to safely parent the child.

"Q.   The father is aware that the mother cannot safely parent the child but has done nothing to assert custody of his child.

"R.   The father failed to protect the children from mother's neglectful behaviors.

"S.   Despite having participated in services designed to improve the father's parenting skills, he is unable to safely parent the child."

The court made R a ward of the court and placed R in the temporary custody of DHS pending a hearing on disposition.

Two weeks after the jurisdictional trial, the court held a dispositional hearing. Without objection, the court

considered all the evidence presented at the jurisdictional trial for purposes of the dispositional hearing. DHS provided additional testimony and exhibits. DHS recommended that the court's dispositional judgment contain a number of features.

In support of a request for psychological evaluation of the parents, DHS permanency worker, Hire, testified. She recounted that, when R came into DHS care in 2014 through 2016, mother had failed to successfully complete drug and alcohol treatment. Father had done so successfully. Mother struggled, through the life of the prior case, in acknowledging the extent that her alcohol and drug issue impacted R. Two residential programs discharged mother as noncompliant. The later program's discharge report indicated that mother showed passive-aggressive resistance to treatment recommendations. The program recommended that mother should receive an extensive cognitive behavior assessment. In the current case, Hire reported that mother's mental health assessment recommended a drug and alcohol assessment and, although several appointments had been scheduled, mother had missed the appointments.

Hire testified that father has been angry and refused to allow DHS on his property. Father has not engaged in any services designed toward the goal of reunification.

Hire explained that "a psychological evaluation gives insight to a parent's behavior, their level of skills, their thoughts[,] and their personalities," and it identifies "strengths and weaknesses of a parent." That insight leads to treatment recommendations regarding case planning for services for parents. Those services "ameliorate the circumstances as to why the child came into care" and, hopefully, provide "a successful reunification." A psychological evaluation determines if there are any barriers or underlying conditions that prevent a parent from being successful. The evaluation can discern "why the parent isn't engaging." The information is relevant to case planning and can be evidence at the time of a permanency judgment or, if return is unsuccessful, the termination of parental rights. The department's past mental health assessment was not the same; the

psychological evaluations were needed to provide psychological testing and diagnosis of any personality disorder.

Hire was concerned that, when DHS visited mother, mother fell asleep—a behavior observed during the prior case—so DHS requested a urinalysis.[1] Hire knew from the assessment Campos had done that mother had at least unspecified adjustment disorder and unspecified personality disorder and that mother had mentioned depression in her testimony. As a consequence, a psychological evaluation would provide more information about those and other issues that might confront mother.

Hire did not know why father has refused to engage with DHS, and she did not know why father was not protective of R when he had been with her. In the prior case in 2016, father had "self-referred" for a mental health assessment, and, in that assessment by a drug and alcohol program, he indicated that he was depressed, could not focus mentally, and had those symptoms off and on for years. Father said that he had been told that he was bipolar in the past but never by a psychiatrist or doctor. According to Hire, when an assessment is from a prior case, DHS does not necessarily rely on that; DHS needs an updated assessment and needs to get information to a psychologist about services the parent has been in. Hire testified that this case is very similar to the last case and that she would be missing pieces of the puzzle without a psychological evaluation to provide a full picture of the parents' functioning.

DHS also asked both parents to comply with a "protective capacity assessment." Hire described the assessment as a conversation that she has with each parent about how they were parented, how they parent, how they see their child, and whether they are able to identify the child's needs. The assessment includes questions about health, alcohol, and drug issues. Hire described the parent's participation as essential to determining appropriate services for a case plan.

---

[1] Mother consistently refused to cooperate in urinalysis until R came into DHS care. A recent urinalysis was negative for controlled substances except marijuana.

Counsel for DHS argued that psychological evaluations were a needed component of treatment for mother and father. Pointing to father's lack of "protective capacity" and mother's "long stint" of failed inpatient treatments, he argued that, unless DHS and the parents have more insight into the parents' barriers, "there's no reason to believe that anything's going to be different this time around." "[W]ithout a psychological evaluation for these parents," he concluded, "we are just setting them up for failure."

Counsel for father argued that there was not sufficient evidence to order a psychological evaluation. Counsel for mother concurred, describing psychological evaluations as unnecessary—at least unless nine or 10 months more passed. She argued that, at this time, an evaluation was just "a fishing expedition" to find evidence against the parents. She acquiesced in the court's direction to engage in substance abuse treatment, parenting classes, and R's education, while noting that mother had signed information releases. However, mother's counsel disputed the court's statutory authority to direct mother to work toward stable housing or consistent visitation.

Counsel for R urged the court to order psychological evaluations of both parents because the exams were needed and they bore a rational relationship to the bases of jurisdiction in the case. He rejected the argument that they were "just a fishing expedition for an anticipated termination of parental rights somewhere down the road." He argued:

> "[T]he stated goal of DHS, the legal goal is to reunify the parents with [R]. [R] wants to be reunified. [R] wants her parents to be drug free, wants them to have [to] deal with their—whatever their psychological issues to help them remain drug free, to help [R] develop at—as a person as she gets older. She needs that. She wants that.
>
> "* * * We have only a limited amount of time to get the parents lined out and get them doing what [they're] supposed to do and we need to be doing that now not standing around.
>
> "And [R], remember, is just not in a good spot. This poor child is * * * way behind."

The court made findings on the record.[2] Given the evidence at hand, the court found that R had suffered long-term neglect that had caused discernable delays in her development. The court found that R was nearly 11 years old, had a low IQ, and was functioning at a first-grade level. Yet, her IQ was still within normal range. The court directed an evaluation of R to determine whether her developmental delays are "genetic versus environmental." The court found that the parents were not cooperating and not letting DHS have access to a child who was struggling. The court declared that DHS is to offer the proposed services and that the parents are ordered to comply. The court commented that overarching general statutes give the court authority necessary to meet the needs of the child and to address the issues of the family.[3] The court found that each of the proposed services for the parents was necessary "and that the evidence in this case provides the rational basis" that is required.[4]

Pressed by mother's counsel to clarify, the court responded, "I'm walking the line." The court stated that it was relying on ORS 419B.337 and ORS 419B.387. The court indicated, "[T]hey've met those standards." The court concluded, "DHS is to offer those services, and I'm order[ing] the parents to comply and meet the expected outcomes of those services."

The juvenile court entered a dispositional judgment that continued R in foster care and made the case plan a reunification with mother and father. To that end, the court determined that mother and father are to comply with seven or eight directions. The first item pertained only to mother;

---

[2] The juvenile court observed, "I find that this hearing that we've had does constitute an evidentiary hearing as defined under [ORS] 419B. 387." On appeal, mother does not dispute that the proceedings below satisfied the requirement of ORS 419B.387 for an evidentiary hearing.

[3] Reluctant to pin each service to a particular statute, the court observed, "[W]e're not limited to specific statutes identifying specific services. There's no way a legislature could ever anticipate that."

[4] The court indicated that, for the reasons offered by counsel for the state and for R, "and the rational basis identified there, I find that that gives the basis for each and every one of the services." Among the services are the psychological evaluations.

the other terms concerned both parents. Those directions were

> "1.  Substance use disorder assessment and follow recommendations, ART services;
>
> "2.  Psychological evaluation and follow recommendations;
>
> "3.  Obtain safe and stable housing;
>
> "4.  Parenting classes and parent training, if recommended;
>
> "5.  Consistent visitation;
>
> "6.  Engage with child's treatment and educational providers to understand child's needs;
>
> "7.  Sign all requested releases of information; and
>
> "8.  Complete Protective Capacity Assessment and follow recommendations."

Finally, the court set a review hearing to occur in 75 days, by which time R's evaluation might explain her delays, show her needs, and how those things might "meld with the parents' skills and functioning."

## II.   DEPENDENCY JUDGMENT

As an initial matter, both parents contend on appeal that the evidence was insufficient to show a present risk that would justify the court taking jurisdiction as to R. DHS underscores facts, which the parents do not generally dispute, and concludes that the juvenile court did not err. We agree with DHS.

When reviewing dependency jurisdiction, we view "the evidence, as supplemented and buttressed by permissible derivative inferences, in the light most favorable to the trial court's disposition and assess whether, when so viewed, the record was legally sufficient to permit that outcome." *Dept. of Human Services v. N. P.*, 257 Or App 633, 639, 307 P3d 444 (2013).

Under ORS 419B.100(1)(c), "the juvenile court has exclusive original jurisdiction" in any case involving a child "[w]hose condition or circumstances are such as to endanger

the welfare of the [child] or of others." The juvenile court will consider "the totality of the circumstances," to determine if "there is a reasonable likelihood of harm to the welfare of the child." *State ex rel. Juv. Dep't. v. Smith*, 316 Or 646, 652-53, 853 P2d 282 (1993). A child is endangered if exposed "to conditions or circumstances that present a current threat of serious loss or injury." *Dept. of Human Services v. C. J. T.*, 258 Or App 57, 61, 308 P3d 307 (2013).

The record here contains substantial evidence of circumstances that present a current threat to R. Campos, the mental health evaluator, observed that mother had characteristics associated with personality disorders. Mother admitted at the hearing that she was addicted to methamphetamine. During the prior dependency case, in 2014 through 2016, mother had failed to successfully complete drug and alcohol treatment. In this proceeding, mother's adult daughter, C, told a caseworker that she and mother had used methamphetamine as recently as March 2020. Although mother's income consisted of modest disability payments, she admitted using some of the money to pay for drugs. Mother suffered residential instability. Due to trouble with rent payments, she and R were evicted from the small trailer in which they had lived, and she did not have a plan where to stay when the charitable money for a motel ran out.

R is a high-needs child. She has adjustment disorder with anxiety, stemming from stress caused by unstable living circumstances. She has suffered developmental delays. She was in the fourth grade but performed at first-grade levels in reading and math. Mother and father were not actively involved in her education. They had not attended her special education planning meetings. Although mother suspected that R might suffer sleep apnea, R had not had medical care in several years.

Father had visited mother and R while they had been living in their trailer, but he did not consider himself a parental resource, because he lived in a primitive trailer and needed to care for his own father.

The juvenile court took jurisdiction based on substantial evidence of housing insecurity, mother's substance

abuse, and both parents' inability to meet R's medical and educational needs. The juvenile court found that a present risk to R was evident in delays in her social and educational development. For those same reasons, we conclude that the juvenile court did not err in taking dependency jurisdiction.

## III.    DISPOSITIONAL JUDGMENT

### A.   *Parents' Challenges*

Parents also contend that the juvenile court erred when it entered a dispositional judgment that, first among other things, required psychological evaluations. Parents argue that psychological evaluations could only be authorized under ORS 419B.387; they argue that the literal terms of ORS 419B.337(2) speak of a court's direction to DHS, not to parents; they argue that our cases construe the two statutes to provide differing *standards* for ordering a psychological evaluation, as opposed to addressing *related factors*.[5] Parents cite no cases that actually reject the applicability of ORS 419B.387 to psychological evaluations; nevertheless, parents contend that the cases that base psychological evaluations on ORS 419B.337(2) should be broadly read to render ORS 419B.387 mere surplusage. Assuming the truth of their proposition, they conclude those cases relying on ORS 419B.337(2) should be overruled as plainly wrong when written.

Under their preferred authority, ORS 419B.387, parents argue that the juvenile court failed to justify psychological exams as a component of treatment or training by tying the exams to substance abuse. Similarly, mother also argues that the juvenile court lacks statutory authority to order her to sign information releases, work toward

---

[5] In relevant part, ORS 419B.337(2) provides:

"The court may specify the particular type of care, supervision or services to be provided by the Department of Human Services to wards placed in the department's custody and to the parents or guardians of the wards[.]"

ORS 419B.387 provides:

"If the court finds in an evidentiary hearing that treatment or training is needed by a parent to correct the circumstances that resulted in wardship or to prepare the parent to resume the care of the ward, the court may order the parent to participate in the treatment or training if the participation is in the ward's best interests."

stable housing, or provide consistent visitation with R. DHS responds that statutory authority is not so narrowly written.

This case represents our first opportunity to clarify that several statutes provide related factors; that they do not impose inconsistent standards; and that our cases should be read together, rather than in conflict. Together, related statutes provide a four-part standard that authorizes a psychological evaluation. To reach our conclusion, we survey the juvenile code for authority and perspective; we visit the case law construing those statutes; we acknowledge the canon on surplusage; we consider the doctrine of *stare decisis*; and, finally, we explain how the statutes dovetail rather than differ.

B.   *Statutory Framework*

We begin with an observation that must precede our drawing any conclusions. The legislature has not provided for psychological examinations or evaluations by using those terms expressly in any provision of the juvenile code. As noted before, ORS 419B.337(2) provides, in relevant part:

> "The court may specify the particular type of care, supervision or services to be provided by the Department of Human Services to wards placed in the department's custody and to the parents or guardians of the wards[.]"

And, ORS 419B.387 provides:

> "If the court finds in an evidentiary hearing that treatment or training is needed by a parent to correct the circumstances that resulted in wardship or to prepare the parent to resume the care of the ward, the court may order the parent to participate in the treatment or training if the participation is in the ward's best interests."

Because neither provision explicitly refers to psychological evaluations, the authority of the juvenile court to approve a plan, or enter an order, that directs psychological evaluations must be found to be implied or authorized by those provisions, other terms of the juvenile code, or other law. Mother and father argue that the court should recognize authority only within ORS 419B.387 and nothing else. We determine, however, that a psychological evaluation involves several, related provisions of the juvenile code.

We review provisions of the juvenile code to ascertain the meaning most likely intended by the legislature that adopted them. *State v. Cloutier*, 351 Or 68, 75, 261 P3d 1234 (2011); *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009); *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610, 859 P2d 1143 (1993). We begin "by examining the text of the statute in its context, along with relevant legislative history, and, if necessary, canons of construction." *Cloutier*, 351 Or at 75. That is because "the text of the statutory provision itself is the starting point for interpretation and is the best evidence of the legislature's intent." *PGE*, 317 Or at 610; *Hollister*, 305 Or App 368, 371-72, 470 P3d 436 (2020). But our focus is not narrowed to one subsection. We said of the statutes at issue here that

> "'[i]n assessing the authority that those statutes confer—indeed, in addressing any issue of statutory construction—we do not address each statute in isolation. Rather, we address those statutes in context, including other parts of the statute at issue.'"

*Dept. of Human Services v. D. R. D.*, 298 Or App 788, 791, 450 P3d 1022 (2019) (quoting *Lane County v. LCDC*, 325 Or 569, 578, 942 P2d 278 (1997)).

Our consideration may also include consideration of case law extant when statutes were adopted. Most recently, the Oregon Supreme Court indicated that its understanding of the juvenile code was "informed" by cases on the matter at the time the juvenile code was adopted. *Dept. of Human Services v. C. M. H.*, 368 Or 96, 116-17, 486 P3d 772 (2021). For that proposition, the court cited *Lindell v. Kalugin*, 353 Or 338, 349, 297 P3d 1266 (2013), for its statement, "case law existing at the time of the adoption of a rule or statute forms a part of the context." *C. M. H.*, 368 Or at 117. Accordingly, we consider both statutes' text, context, and case law construing those provisions.

In *C. M. H.*, the Oregon Supreme Court described the nature of our juvenile courts. It explained:

> "Under the modern statutory framework, the 'juvenile court' is part of the circuit court. Each juvenile court is officially the 'Juvenile Department' of the particular circuit court in which it is located, and the judges of the circuit

court exercise the jurisdiction and authority of the juvenile court."

368 Or at 103 (citing ORS 419B.090). As provided in ORS 3.260(1), "The circuit courts and the judges thereof shall exercise all juvenile court jurisdiction, authority, powers, functions and duties."

As observed in *C. M. H.*, 368 Or at 105, the grant of original jurisdiction to the juvenile court can be traced to 1959 when the legislature enacted a comprehensive juvenile code in a single set of statutes governing both dependency and delinquency. Or Laws 1959, ch 432; *see State ex rel Juv. Dept. v. Reynolds*, 317 Or 560, 567-70, 857 P2d 842 (1993) (recounting that the 1959 revision overhauled piecemeal legislation enacted from 1907). In 1993, the statutes on the juvenile matters were divided into three chapters. Or Laws 1993, ch 33; *see Dept. of Human Services v. T. L.*, 358 Or 679, 699, 369 P3d 1159 (2016) (describing 1993 revisions as "a comprehensive reorganization of the juvenile code"). One of those three chapters, ORS chapter 419B, dubbed "Juvenile Code: Dependency," becomes our primary context.

In ORS 419B.090, we find confirmation of the status of the juvenile court, and we gain an important perspective on the juvenile code as a whole:

"(1)   The juvenile court is a court of record and exercises jurisdiction as a court of general and equitable jurisdiction and not as a court of limited or inferior jurisdiction. ***

"*****

"(2)(c)  *The provisions of this chapter shall be liberally construed* to the end that a child coming within the jurisdiction of the court may receive such care, guidance, treatment and control as will lead to the child's welfare and the protection of the community."

(Emphasis added.) Potentially, a liberal construction that promotes parents' involvement in services, better designed for them, is one that would "lead to the child's welfare."

From other provisions, we learn that a person is subject to the jurisdiction of the court when served with

summons, ORS 419B.803; that parents are to be made parties to the proceedings in juvenile court, ORS 419B.875 (1)(a)(B); and that parents, when served, are subject to the jurisdiction of the court, ORS 419B.385.

Foremost among orders affecting parents, the juvenile court may issue an order that a child be taken into protective custody. ORS 419B.150(6). With certain exceptions, "the jurisdiction of the juvenile court of the county in which a child is taken into protective custody shall attach from the time the child is taken into custody." ORS 419B.157. A speedy hearing within 24 hours is required, ORS 419B.183; and the evidentiary hearing must address what reasonable efforts DHS has already taken to avoid removal or to facilitate return of the child, ORS 419B.185(1). Generally, within 60 days of a petition that a child should be within the jurisdiction of the juvenile court, ORS 419B.305, the court must hold a hearing, receive evidence, find or reject jurisdiction, and determine disposition of the matter, ORS 419B.310; ORS 419B.325.

It is at this jurisdictional hearing that the court determines whether jurisdictional allegations are proven, and, like the shelter hearing before, whether reasonable efforts were made to avoid removal or make it possible for the child to return home safely. *See* ORS 419B.337(1). The court may remove or continue removal of the child from the home. *Id.* And, it is also at that hearing at which "[t]he court may specify the particular type of care, supervision or services to be provided by the Department of Human Services" to the child and "to the parents or guardians" of the child. ORS 419B.337(2).

Several specific provisions provide for orders to parents. For one, the court may make orders, obviously directed at a parent, "regarding visitation by the ward's parents or siblings." ORS 419B.337(3). For another, "[t]he court may order the parent or guardian to assist the court in any reasonable manner in providing appropriate education or counseling for the ward." ORS 419B.385. And, as previously noted, "the court may order the parent to participate in the treatment or training" needed to correct the circumstances that caused wardship or to prepare the parent to resume the

care of the ward, "if the participation is in the ward's best interests." ORS 419B.387.

The court must hold a permanency hearing, generally, no later than 12 months after the court found the child within the court's jurisdiction. ORS 419B.470(2). At the request of DHS, parents, or child, the permanency hearing shall be held at any time—thus potentially sooner than 12 months. ORS 419B.470(6). It is that hearing at which the court makes the often-litigated determinations: when the plan is for the child's return, whether DHS has made reasonable efforts, or, if the Indian Child Welfare Act (ICWA) applies, active efforts, to make it possible for the child to safely return home, and whether the parents have made sufficient progress for that to happen. ORS 419B.476(2)(a). To do so, the juvenile court looks back at the plan imposed at the time of the jurisdictional hearing. The court may "[d]etermine the adequacy and *compliance* with the case plan and case progress report." ORS 419B.476(4)(d) (emphasis added). Most certainly, "compliance" refers to DHS. Reasonably, "compliance" refers to the parents, as well.

It is also at this point in statutory context at which the legislature made most express its expectation that a parent has been or may be compelled to cooperate in services intended to return the child to the home. That is, ORS 419B.476(4)(c) provides explicitly that the court may,

"[i]f the court determines that further efforts will make it possible for the ward to safely return home within a reasonable time, *order that the parents participate in specific services* for a specific period of time and make specific progress within that period of time[.]"

(Emphasis added.) Within 20 days after the hearing, the court must enter an order, if it has made such a determination. ORS 419B.476(5). The legislature repeated the point by providing that, in addition to what may have been ordered under ORS 419B.476(4), the court may determine services in which parents are required to participate:

"If the court determines that the permanency plan for the ward should be to return home because further efforts will make it possible for the ward to safely return home within a reasonable time, the court's determination of the

services in which the parents *are required to participate*, the progress the parents are required to make and the period of time within which the specified progress must be made."

ORS 419B.476(5)(c) (emphasis added).

The juvenile court does not lack the ability to enforce its orders or the requirements it sets for parents. To be sure, the natural bonds between parent and child motivate compliance and serve the goal of the juvenile code to provide for the safe return of the child to parents. *See* ORS 419B.090(5) (policy statement for the safe return of a child where possible). But, where natural motivation falters, the juvenile code provides:

"A court may enforce an order or judgment directing a party to perform a specific act by punishing the party refusing or neglecting to comply with the order or judgment, as for a contempt as provided in ORS 33.015 to 33.155."

ORS 419B.929. The juvenile code tempers the risk of contempt, with ORS 419B.389, which provides:

"A parent who believes or claims that financial, health or other problems will prevent or delay the parent's compliance with an order of the court must inform the court of the relevant circumstances as soon as reasonably possible and, if appropriate, seek relief from the order under ORS 419B.923."

Thankfully, few, if any, reported cases reflect the need for contempt sanctions against parents.

Nevertheless, the need for the court's authority to give direction to parents and to DHS is reflected in the presence of statutes providing for the court's approval for a plan of services to be provided by DHS "*to the parents*" (ORS 419B.337(2) (emphasis added)), a specific reference that would seem to necessitate their involvement. In addition, the need for direction to parents is reflected in several specific provisions on visitation, education, and treatment or training (ORS 419B.337(3), ORS 419B.385, and ORS 419B.387), a provision to review the parties' compliance with the plan (ORS 419B.476(4)(d)), twin subsections explicitly providing for the court's order to parents to participate in services

(ORS 419B.476(4)(c), (5)(c)), and provisions for an unlikely sanction of contempt (ORS 419B.929; ORS 1.010(4), (5)). Yet, as noted at the outset, none of those provisions explicitly reference psychological evaluations. It is our case law that does.

C.  *Two Lines of Precedent*

We have recognized that two lines of cases have developed on the question of statutory authority for psychological evaluations. One line is long-standing; one is recent. *Dept. of Human Services v. L. J. W.*, 302 Or App 126, 130, 460 P3d 540 (2020). Because that is so, we declined in *L. J. W.* to review on a plain-error basis a father's unpreserved challenge to a juvenile court's legal authority for a psychological evaluation. *Id.* at 130-31.

1.  *"G. L. cases" under ORS 419B.337(2)*

In *L. J. W.*, we recognized that the older line of cases was founded on ORS 419B.337(2) and its humble origins before adoption of the current juvenile code in 1993. *Id.* at 131; *see C. M. H.*, 368 Or at 106 (referring to Or Laws 1993, ch 33). In the earliest case involving a psychological evaluation of parents, the Oregon Supreme Court resolved a dispute whether the state or county should pay for the services. *State ex rel Segrest v. Van Hoomissen*, 276 Or 1077, 1081, 557 P2d 661 (1976). The decision's references were statutes on court services for juvenile matters, among other matters. Pursuant to ORS 3.280 the circuit court may obtain "court services." "Court services" were and are defined by ORS 3.250(2) as including but not limited to services related to "shelter care, investigations, study and recommendations on disposition of cases *** and psychological or psychiatric or medical consultation and services provided at the request of or under the direction of the court." The provision for such services was and is still founded in legislative policy declared in ORS 3.255:

"It is declared to be the policy and intent of the Legislative Assembly:

"* * * * *

"The judges of the circuit court need adequate court services to assist them in exercising jurisdiction over the family and family-related matters."

The Supreme Court observed, "ORS 3.250(2) indicates that the court can order such psychiatric or medical consultation as it requires as an aid in determining what is best for the child." *Segrest*, 276 Or at 1081. The dispute in *Segrest*, however, did not pertain to the court's authority to order a parent to cooperate in such an exam.

The next year, this court faced a mother's challenge, among other complaints, that the juvenile court lacked authority to order the psychiatric evaluation that led to the termination of her parental rights. *State ex rel Juv. Dept. v. Maginnis*, 28 Or App 935, 937, 561 P2d 1044 (1977). In that case, we declared that in *Segrest* the Supreme Court had "explicitly acknowledged that a juvenile court does, in fact, have the authority to order a psychiatric or medical evaluation of a parent where that evaluation is helpful as an aid in determining what is best for the child[.]" *Id.* We did not pin that statement to a particular provision in the 1977 statutes that predated the adoption of the current juvenile code.

In *State ex rel Juv. Dept. v. G. L.*, 220 Or App 216, 221-22, 185 P3d 483, *rev den*, 345 Or 158 (2008), we faced the question again, this time after adoption of the juvenile code, and we applied the modern text-and-context methodology of *PGE*, 317 Or at 610, to locate the court's authority to order a parent's psychological evaluation in ORS 419B.337(2), augmented by ORS 419B.343(1)(a). We explained that the court may specify the services to be provided by DHS to the parents, under ORS 419B.337(2), in conjunction with DHS's responsibility to develop a case plan and provide services that bear "a rational relationship to the jurisdictional findings that brought the ward within the court's jurisdiction," under ORS 419B.343(1)(a). *Id.* at 222. We acknowledged the statutes' terms that refer to the court specifying the services that DHS must provide to the parent, but we went on to determine the statutes provided authority for the court to order the mother to cooperate in a psychological exam. *Id.* at 223. We concluded that,

"because mother has failed to benefit from past services designed to address her inability to protect her children, and because DHS is obligated to develop a case plan to provide mother with services to enable her to do so, the court's order for mother to submit to a psychological evaluation bears a rational relationship to the bases the court found for taking jurisdiction. ORS 419B.343(1)(a). The trial court did not exceed its authority under ORS 419B.337(2) by ordering mother to participate in a psychological evaluation."

*Id.* at 224. We noted that we reached a similar conclusion under a prior version of the dependency statutes in *Maginnis.* *Id.* at n 5.

If we recognize that *G. L.* represents a similar conclusion to that reached in *Maginnis* in 1977 under earlier statutes, then this court has followed that authority found in current or prior statutes for over 40 years. *See State v. R. H.*, 237 Or App 245, 251, 251-55, 239 P3d 505 (2010) (citing *G. L.* and holding that, because it was unclear whether sexual abuse did occur or whether the child was confused, the evaluation was a rational way to see if father did pose a risk and, if so, what treatment was necessary); *Dept. of Human Services v. B. W.*, 249 Or App 123, 125, 127-29, 275 P3d 989 (2012) (relying on ORS 419B.337(2) and ORS 419B.343 and holding that, although the allegations of jurisdiction did not involve a mental health issue, the psychological evaluation would aid DHS in assessing the father's safety risk, given his conviction for riot and assault, and would help determine what services DHS should provide); *Dept. of Human Services v. A. E. F.*, 261 Or App 384, 387, 323 P3d 482 (2014) (holding that the juvenile court erred in construing too narrowly when it could order parent's psychological evaluation; remanding to follow *G. L.*).

Never in that *G. L.* line of cases was the question presented to this court asking that we address the relationship of ORS 419B.387 to ORS 419B.337(2) and ORS 419B.343(1)(a). Ironically, *G. L.* reflected that we were fully aware from the outset of the requirements of ORS 419B.387. In that case, we raised the question whether the order to follow whatever recommendations might be included in a report on the psychological evaluation might require a second evidentiary hearing pursuant to ORS 419B.387. The mother waived off

the concern, saying that there were no such recommendations yet and she was not raising that issue on appeal. *G. L.*, 220 Or App at 221 n 3. The fact that we flagged the question remains significant. Because we raised on our own the requirements of ORS 419B.387 in *G. L.*, we cannot construe *G. L.* or the cases that followed, as rejecting the related role of ORS 419B.387—whatever that role might be.

The issue here arose too late to be decided in *Dept. of Human Services v. A. F.*, 295 Or App 69, 71, 433 P3d 459 (2018). The mother challenged a dispositional judgment that ordered her to submit to a psychological evaluation. We relied on ORS 419B.337(2) for the court's direction of services and ORS 419B.343 for the requirement that services bear "a rational relationship to the findings that brought the child within the court's jurisdiction." *Id.* at 74 (internal quotation marks omitted). We rejected the mother's belated assertion of ORS 419B.387 as a basis to overrule prior cases because that argument was made too late in the appeal process to be entertained. *Id.* at 75. We affirmed the juvenile court's disposition with its order for the psychological evaluation under ORS 419B.337(2). *Id.* at 79.[6]

2.   *"D. R. D. cases" under ORS 419B.387*

The unsuccessful attempt in *A. F.* to inject ORS 419B.387 into the debate about psychological evaluations fared somewhat better with the father's argument in *D. R. D.*, 298 Or App at 790-91. We declined the invitation to overrule the *G. L.* line of cases under ORS 419B.337(2) because the order for a psychological evaluation in *D. R. D.* was based in ORS 419B.387 and did not require this court to confront the *G. L.* cases. *D. R. D.*, Or App at 796 n 3. Even so, we did

_____

[6] Subsequently, in *Dept. of Human Services v. K. J.*, 295 Or App 544, 549-50, 435 P3d 819 (2019), we demonstrated that the "rational relationship" test does not mean any proof suffices. We concluded that the initial problems about physical health and housing concern were not things to be addressed by a psychological evaluation. We reversed. *Id.* at 551-52. *See also Dept. of Human Services v. F. D. B.*, 289 Or App 633, 634, 407 P3d 982 (2017) (accepting DHS concession that the order for a psychological evaluation did not bear a rational relationship to the bases of jurisdiction); *Dept. of Human Services v. D. W. W.*, 278 Or App 821, 822, 379 P3d 796 (2016) (expressing rational relationship standard and accepting DHS concession); *A. E. F.*, 261 Or App at 387 (remanding for juvenile court to determine whether there is a rational relationship between jurisdictional allegations and a psychological evaluation).

construe ORS 419B.337, ORS 419B.343, and ORS 419B.387. We recognized that ORS 419B.337(2) "instructs, in relevant part," that the juvenile court may specify the services to be provided by DHS and that ORS 419B.343 requires that case planning bear "a rational relationship to the jurisdictional findings." *Id.* at 797-98 (internal quotation marks omitted). We determined:

> "ORS 419B.387, on its face, clearly conditions a juvenile court's authority to order a parent or guardian to participate in treatment or training upon an 'evidentiary hearing' at which point evidence must establish, to the juvenile court's satisfaction, that such treatment or training is 'needed.'"

*Id.* at 799. We further determined that "a psychological evaluation—*as a component of treatment or training*—is authorized under ORS 419B.387." *Id.* (emphasis in original). We rejected the father's argument that a psychological evaluation is just a means to develop incriminating information for termination of parental rights and is not a related predicate to determining treatment. *Id.* at 793 ("not treatment"); *id.* at 799 (father's focus misplaced). But, acknowledging the potential misuse of a psychological evaluation, we cautioned that a psychological evaluation cannot be used as a "discovery mechanism" to determine *if* services for treatment and training are needed. *Id.* at 799. Yet, when an evidentiary hearing leads to a finding of a need for such services, "that then creates the court's authority to order a parent to comply with that treatment or training." *Id.* at 799-800. Because the father had not been able to stay drug-free, we concluded the juvenile court did not err in ordering him to cooperate in a psychological evaluation. *Id.* at 800.

In a variation on that theme, in *Dept. of Human Services v. T. L. H.*, 300 Or App 606, 616, 453 P3d 556 (2019), we rejected a challenge to the juvenile court's authority to order a father's psychological evaluation, because the juvenile court had found in an evidentiary hearing that the child had extraordinarily high needs and that the father would need to develop exceptional parental skills to care for the child. The father had struggled with drug addiction and homelessness. He had only recently engaged in housing services, was in drug and alcohol treatment, and suffered

post-traumatic stress disorder. The psychological evaluation would provide "a fuller picture of father's circumstances in order to determine how to prepare father to meet his child's needs." *Id.* at 616. We held, under ORS 419B.387, that the juvenile court did not err in ordering the evaluation. *Id.* at 616-17.

Although *D. R. D.* and *T. L. H.* were new in the sense of grounding orders for psychological evaluations in ORS 419B.387, that statute has been part and parcel of the juvenile code since its adoption in 1993. Or Laws 1993, ch 546, § 55. At least in part, *D. R. D.* achieved the parent's goal of injecting ORS 419B.387 into the discussion. The result was our recognition that an evidentiary hearing is required to establish a need for services—treatment and training—of which psychological evaluation is a predicate component. However, *D. R. D.* did not overrule the *G. L.* line of cases, nor question the authority of ORS 419B.337(2) and ORS 419B.343(1) for psychological evaluations as part of a court-approved plan for services rationally related to the bases of jurisdiction.

D.   *An Analysis of Statutes and Cases*

We are unpersuaded by the parents' propositions that the court's authority lies exclusively in ORS 419B.387, that ORS 419B.337(2) and ORS 419B.343(1)(A) render ORS 419B.387 mere surplusage, and that the *G. L.* line of cases is somehow plainly wrong.

No one disputes the declaration of legislative policy that judges of the juvenile courts, as judges of our circuit courts, "need adequate court services" and that such "court services" include psychological evaluations of parents. *See* ORS 3.255(2) (legislative policy); ORS 3.250 (definitions); *see, e.g.*, *Segrest*, 276 Or at 1081. No one disputes that at the time of a jurisdictional hearing the juvenile court has authority to specify the "care, supervision or services to be provided" by DHS to the child and "to parents or guardians." *See* ORS 419B.337(2) (although "the actual planning and provision of such care, supervision or services is the responsibility of the department," the court may specify "care, supervision or services to be provided"). No one disputes that a psychological evaluation may be included as a feature of a case

plan for services to parents. *See D. R. D.*, 298 Or App at 798 (citing ORS 419B.337(2)); *G. L.*, 220 Or App at 222 (same). And, no one disputes that a psychological evaluation may be a "component of treatment or training" to determine or tailor services needed. *D. R. D.*, 298 Or App at 799 (emphasis omitted).

We reiterate that the legislature did not provide explicitly for orders to parents for psychological evaluations in either ORS 419B.337(2), ORS 419B.387, or elsewhere. Therefore, it is difficult to assume hastily that the legislature intended ORS 419B.387 to be the sole reference concerning orders to parents for psychological evaluations. That difficulty is great because this court first fixed the authority for orders for psychological evaluations in ORS 419B.337(2) and ORS 419B.343(1)(a) with our decision in *G. L.*, 220 Or App at 223-24.

We remember the recent acknowledgement in *C. M. H.* that case law existing at the time of the adoption of a statute informs our understanding of the juvenile code. 368 Or at 117. In *G. L.*, 220 Or App at 224 n 5, we cited the 1977 decision in *Maginnis*, 28 Or App at 937, and recognized that in *Maginnis* "[w]e reached a similar conclusion under a prior version of the dependency statutes." *Maginnis* had held that "a juvenile court does, in fact, have the authority to order a psychiatric or medical evaluation of a parent where that evaluation is helpful as an aid in determining what is best for the child[.]" 28 Or App at 937. *Maginnis* was existing case law when the legislature adopted the juvenile code in 1993, and the legislature apparently did so without a change in statutory authority that would have prevented our conclusion in *G. L.* that a juvenile court has authority under ORS 419B.337(2) and ORS 419B.343(1)(a) to order a parent to cooperate in a psychological evaluation.

Thereafter, with *Maginnis* still extant, the legislature amended ORS 419B.337 five times before *G. L.* and once after *G. L.* Or Laws 1999, ch 859, § 10; Or Laws 2003, ch 396, § 57; Or Laws 2005, ch 679, § 1; Or Laws 2007, ch 806, § 6; Or Laws 2015, ch 254, § 6. At the time when the legislature made its last revision in 2015, three more decisions following *G. L.* had been added to the books.

*R. H.*, 237 Or App 245; *B. W.*, 249 Or App 123; *A. E. F.*, 261 Or App 384. That case law, existing at the time of enactment and amendments, informs our understanding of the construction of ORS 419B.337(2) as the legislature would have understood it. The legislature would have understood ORS 419B.337(2) and ORS 419B.343(1)(a) to provide the juvenile court authority to specify services to the child and parents and, within that authority, to understand that services to the parents directs their cooperation in a psychological evaluation.

That understanding comports with the flow of juvenile proceedings; and that flow provides context for ORS 419B.337(2). Closely related, ORS 419B.476(4)(d) requires at a permanency hearing that the juvenile court determine the "adequacy and *compliance*" with the case plan and case progress report. (Emphasis added.) That retrospective review of "compliance" fairly implies that parents have already been required to comply with the case plan by cooperating with services—just as DHS is required to comply by providing services.

Lest there be any doubt about the authority of the juvenile court to direct the parents' cooperation, ORS 419B.476(4)(c) provides that, if further efforts will make possible the safe return of the child, then the court may "order that the parents participate in specific services" and that they "make specific progress." Likewise, ORS 419B.476(5)(c) refers to "the court's determination of the services in which the parents *are required to participate*." (Emphasis added.) At the very least, those provisions demonstrate, contrary to parents' view, that ORS 419B.387 cannot be the sole source of authority to order a parent to cooperate in services, such as a psychological evaluation. Instead, those subsections of ORS 419B.476 show that the several statutes are related or complimentary.

The sequential context of the dependency process suggests that the time of a permanency judgment, up to 12 months after the petition, cannot be the first time that the court can order parents to cooperate. All those many months between jurisdictional and permanency judgments are intended as the time in which DHS provides services

and the parents have been directed to make sufficient progress for the return of the child. Therefore, a practical understanding of legislative intent, reflected in the sequence of the process, is that, just as *G. L.* determined, the juvenile court has authority under ORS 419B.337(2) and ORS 419B.343(1)(a), at the time of a jurisdictional judgment, to approve a plan of services that includes directions for the parents' cooperation in those services, such as a psychological evaluation.

If parents perceive that *G. L.* takes liberties with the terms of a statute that provides that the court shall specify services to be delivered by DHS to parents, then it is a liberty made sensible by sequence of the juvenile process and the context in which ORS 419B.337(2) appears in ORS chapter 419B. That liberty reflects the "liberal construction" that the legislature declared should guide construction of ORS chapter 419B. ORS 419B.090(2)(c); *see generally* ORS 3.255(2) (judges need court services, including psychological services, in the exercise of jurisdiction over juvenile matters). After all, ORS chapter 419B "shall be liberally construed" to promote the care of the child, and a psychological evaluation promotes that goal by discerning the services needed to improve the parents' care of the child.

Few liberties, however, are needed to understand the textual basis for the juvenile court's authority under ORS 419B.337(2) to direct a parent's cooperation in a reunification plan that includes a psychological evaluation. As noted before, the statute provides that "[t]he court may specify the particular type of * * * services to be provided by [DHS] * * * *to the parents*[.]" (Emphasis added.) To specify services provided by DHS to parents means that DHS must provide those services and the parents must participate in receiving those services. That is to say, the court's direction is as much an order to parents as it is to DHS.

That understanding comports with the conclusions reached in *Maginnis* and *G. L.* In effect, *Maginnis* first recognized the authority of the court to order a psychological evaluation and then concluded that, to be effective, the order may require the parent's participation. Such an order is logically and necessarily directed to a parent. In the same way,

*G. L.* first recognized that ORS 419B.337(2) provides that the court may order services to be provided to parents and then concluded that a plan, which includes a psychological evaluation, to be effective, may require the parent's participation. An order for services, including a psychological evaluation, is logically and necessarily directed to a parent. To construe the statutes otherwise makes the statute ineffectual and renders the plan ineffective—at a critical juncture in a process when a court has intervened to protect a child and promote reunification.

E. *Surplusage?*

Parents ask us to reach a contrary conclusion based on their argument about a canon of statutory construction about surplusage. They argue that the "rational basis" standard of ORS 419B.337(2) and ORS 419B.343(1)(a) would render meaningless or unnecessary the evidentiary showing of "need" for treatment or training in ORS 419B.387. Therefore, they insist, the *G. L.* line of cases should be declared to be plainly wrong when decided.

We agree that statutory provisions "must be construed, if possible, in a manner that 'will give effect to all' of them." *Force v. Dept. of Rev.*, 350 Or 179, 190, 252 P3d 306 (2011) (quoting *Powers v. Quigley*, 345 Or 432, 438, 198 P3d 919 (2008) (quoting ORS 174.010)). Our Supreme Court has observed that, "at the least, an interpretation that renders a statutory provision meaningless should give us pause." *Cloutier*, 351 Or at 98. And, that court has also observed:

> "We wish to be clear that the fact that a proposed interpretation of a statute creates some measure of redundancy is not, by itself, necessarily fatal. Redundancy in communication is a fact of life and law."

*Id.* at 97. In this case, parents' argument about surplusage is not persuasive for a pair of reasons.

First, the specific terms of the two provisions do not duplicate or subsume one another. In ORS 419B.337(2), the legislature has provided that

> "[t]he court may specify the particular type of care, supervision or services to be provided by the Department of

Human Services to wards placed in the department's custody and to the parents or guardians of the wards[.]"

And, at ORS 419B.387, the legislature has provided that

"[i]f the court finds in an evidentiary hearing that treatment or training is needed by a parent to correct the circumstances that resulted in wardship or to prepare the parent to resume the care of the ward, the court may order the parent to participate in the treatment or training if the participation is in the ward's best interest."

None of the terms of the two provisions repeat the other. None of the terms of the two provisions duplicate or conflict. At the textual level, there *is* no surplusage.

Second, the parents' argument is more abstract, addressed to case law, not to the statutory terms themselves; and theirs is an argument that posits a problem that does not exist. Their argument misconstrues the provisions' related factors to be differing standards; and they assume one statute (ORS 419B.337(2)) somehow subsumes another (ORS 419B.387). However, the problem is less a matter of redundancy than reconciliation. The gist of ORS 419B.337(2) is that the juvenile court may specify the services that will comprise the case plan, ORS 419B.343(1)(a) requires that services be rationally related to jurisdictional findings, and ORS 419B.387 adds that, before the court orders treatment or training, the court must hold an evidentiary hearing, determine that there is a need for treatment or training to correct circumstances necessitating the court's involvement or to prepare the parents for the child's return, and that the parents' participation is in the child's best interest. Nothing in ORS 419B.337(2) or ORS 419B.343(1)(a) precludes the need for an evidentiary determination of need for services like treatment or training. And, nothing in ORS 419B.387 precludes the court's authority to order a parent's cooperation with a plan that directs a psychological evaluation when "rationally related" to the jurisdictional findings, as ORS 419B.343(1)(a) requires. The provisions are complementary. ORS 419B.337(2) and ORS 419B.343(1)(a) do not render meaningless ORS 419B.387. Those several provisions may be said to be redundant only insofar as they all relate to psychological evaluations, but they do not duplicate. They do not reflect a faulty interpretation of one or the other.

F.   *Plainly Wrong?*

Because there is no problem with redundancy, there is no reason to think that the *G. L.* line of cases are plainly wrong. Nevertheless, parents further argue that the *G. L.* line of cases are plainly wrong because ORS 419B.337(2) does not speak to the court ordering a parent to receive services and because *G. L.* somehow fails to consider or give effect to ORS 419B.387. We have, however, already explained how case law at the time of adoption of the juvenile code and its subsequent amendments, the flow of the juvenile process, the context of other statutory provisions, and the underlying authority of the court to control conduct of the parties engaged in a judicial process together authorize the juvenile court to approve a plan of services that directs the parents to cooperate in those services. And, we have explained that there is no reason to assume that the standards of ORS 419B.337(2), ORS 419B.343(1)(a), and ORS 419B.387 are not in harmony.

We have noted, "Whatever the ultimate meaning of 'plainly wrong,' to be 'plainly wrong' a holding must first be wrong." *State v. Civil*, 283 Or App 395, 406, 388 P3d 1185 (2017). The "'plainly wrong' requirement" is "not absolute." *Id.* at 416. Yet, we do not "lightly overrule" our precedents. *Id.* (internal quotation marks omitted). We have cautioned that

> "[m]ere disagreement, however, is not—and cannot be—a sufficient justification for overruling precedent. Rather, the prudential principles that undergird *stare decisis* as well as practical institutional considerations, require more. Much more."

*Id.* at 415. The Oregon Supreme Court has explained that

> "the principle of *stare decisis* dictates that this court should assume that its fully considered prior cases are correctly decided. Put another way, the principle of *stare decisis* means that the party seeking to change a precedent must assume responsibility for affirmatively persuading us that we should abandon that precedent."

*Farmers Ins. Co. v. Mowry*, 350 Or 686, 692, 261 P3d 1 (2011) (internal quotation marks omitted). That is no easy task, and for good reason.

> "[T]he application of *stare decisis* is not mechanistic. Rather, *stare decisis* is a prudential doctrine that is defined by the competing needs for stability and flexibility in Oregon law. Stability and predictability are important values in the law; individuals and institutions act in reliance on this court's decisions, and to frustrate reasonable expectations based on prior decisions creates the potential for uncertainty and unfairness. Moreover, lower courts depend on consistency in this court's decisions in deciding the myriad cases that come before them. Few legal principles are so central to our tradition as the concept that courts should '[t]reat like cases alike,' H.L.A. Hart, *The Concept of Law* 155 (1st ed 1961), and *stare decisis* is one means of advancing that goal."

*Id.* at 697-98.

In *Mowry*, the court articulated three alternative bases that could cause the court to reconsider precedent. 350 Or at 694. They are

> "(1) that an earlier case was inadequately considered or wrong when it was decided; (2) that surrounding statutory law or regulations have altered some essential legal element assumed in the earlier case; or (3) the earlier rule was grounded in and tailored to specific factual conditions, and that some essential factual assumptions of the rule have changed."

*Id.* (internal quotation marks omitted). The parents assert the first basis only. The latter two bases are not in play. That is because, in material part, ORS 419B.337(2), ORS 419B.343(1)(a), and ORS 419B.387 have not changed since the adoption of the juvenile code, and no factual bases for *G. L.* have changed in the ensuing years.

As noted, parents insist that *G. L.* was wrongly decided at the time it was written because it failed to discuss ORS 419B.387. However, nothing in *G. L.* denies the requirements of ORS 419B.387 that the court must conduct an evidentiary hearing to determine a need for treatment and training. Further, nothing is inconsistent about the determination in *G. L.* that a psychological evaluation must be rationally related to the jurisdictional findings that create the need for the court's involvement. By definition, under ORS 419B.387, the "treatment or training [that] is needed

by a parent to correct the circumstances that resulted in wardship or to prepare the parent to resume the care of the ward," involves the same jurisdictional findings that created the need for the court's involvement. In other words, ORS 419B.337(2), ORS 419B.343(1)(a), and ORS 419B.387 are addressed to the same thing—remedying the circumstances causing the court's involvement. Thus, the "rationally related" requirement of services under ORS 419B.337(2) and ORS 419B.343(1)(a) is inherent in and required by ORS 419B.387.

To the extent that parents or DHS imagine that *G. L.* and succeeding cases stand for the implausible proposition that *G. L.* set the sole requirement for an order for a psychological evaluation—especially the sole requirement that displaces other requirements—we reject that notion. To the extent that parents posit that *G. L.* is "plainly wrong," it is their exaggeration of *G. L.* that is mistaken. Aware of prior precedent in *Maginnis*, *G. L.* attributed the court's authority to direct parents to cooperate in a psychological evaluation to the court's authority to specify services "to parents" under ORS 419B.337(2) (where there is no plain language to the contrary); *G. L.* required a finding that such services be "rationally related" to the jurisdictional findings under ORS 419B.343(1)(a) (a requirement that should remain unarguable); and *G. L.* acknowledged in its footnote 3 that other requirements exist as in ORS 419B.387 (an acknowledgement that cannot be ignored). *G. L.* may not have been a complete exegesis, but it was a start. It correctly highlighted one necessary finding from ORS 419B.343(1)(a). *D. R. D.* cited ORS 419B.343(1)(a), too, and highlighted others from ORS 419B.387. Contrary to the parents' view, *G. L.* never denied other statutes; *G. L.* is not "*plainly* wrong." We conclude that parents have not carried their burden to show that *G. L.* and ensuing cases were plainly wrong at the time that they were decided.

## IV.  APPLICATION

A.  *Standard for a Psychological Evaluation*

Until now, we have been presented only with appeals addressed to one statute or another. With this case, however, we can address the requirements of several related

statutes. Thus, we conclude that the court may order a psychological evaluation of a parent, after an evidentiary hearing, by making findings that:

1.    The psychological evaluation is for a service that is rationally related to the findings that bring the child into the court's jurisdiction (ORS 419B.337(2); ORS 419B.343 (1)(a));

2.    The psychological evaluation is a predicate component of treatment or training of a parent (ORS 419B.387);

3.    There is a need for treatment or training to correct the circumstances that caused the jurisdictional findings or to prepare the parent for the child's return (ORS 419B.343(1)(a); ORS 419B.387); and

4.    The parent's participation in such treatment or training is in the best interest of the child (ORS 419B.387).

Thus gathered, that four-part standard harmonizes our cases from *Maginnis,* through *G. L.* and *D. R. D.*

Parenthetically, we acknowledge that the concurring and dissenting opinion contends that the first requisite—that an evaluation must be rationally related to jurisdictional findings—is duplicative, unnecessary, and merely "spackling compound" to cover over *G. L.*'s "mistake." *Dept. of Human Services v W. C. T.*, 314 Or App 789-90, (Mooney, J., concurring in part, dissenting in part). No one claims, however, that *G. L.* was wrong, let alone plainly wrong, in concluding that ORS 419B.343(1)(a) imposes a requirement that a psychological evaluation must be rationally related to the factual reasons for the court's intervention in the family. As we have already discussed, that requirement is implicit in ORS 419B.387. But, that requirement is not a conflicting standard, nor is it confusing or duplicative. Instead, it *is* necessary, and it is properly understood as a part of the governing standard that is the juvenile court's checklist. The requirement is the first protection for parents against ill-advised psychological evaluations, as is demonstrated by the line of cases, following *G. L.*, in which orders for psychological evaluations were denied.[7]

---

[7] *See* 314 Or App at 765 n 6.

B.  *Psychological Evaluation of Mother*

       All that said, we apply that standard to this case with differing results as to the parents. The parents do not dispute that the juvenile court satisfied the requirement of ORS 419B.387 for an evidentiary hearing. That hearing provided relevant evidence about a need for services and a reason for psychological evaluations to design those services. The juvenile court found that the parents were not cooperating and not letting DHS have access to a child who was struggling. As noted, the court found that R had suffered long-term neglect that had caused discernable delays in her development. No one disputed that she had special needs. No one disputed that services to her parents, so as to facilitate her safe return, was in her best interest. Beyond those facts the evidence as between the two parents, however, was not the same.

       During the previous case in 2014 through 2016, mother had failed to successfully complete drug and alcohol treatment. Mother had been passive-aggressive in resisting treatment recommendations. In this case, she had missed appointments for a drug and alcohol assessment. A report indicated that mother suffered at least an unspecified adjustment disorder and unspecified personality disorder; and she had mentioned depression in her testimony. Mother admitted she used some of her limited income to pay for drugs. She testified that in July 2019 she began using methamphetamine again, reportedly once or twice a month. Mother admitted that she was addicted to methamphetamine and would benefit from treatment.

       Those facts provided substantial evidence for the juvenile court's explicit and implicit findings that there was a need for "every one of the identified services" that DHS recommended as to mother, that those services had a "rational basis" in the jurisdictional findings, that a psychological evaluation would provide insight in determining services (*i.e.*, serve as a predicate component of services to be provided), and that it was in R's best interests that mother engage in those services. Although every case is decided on its own unique facts, those facts were, in sum and substance, the same facts that warranted a psychological evaluation in

*D. R. D. See* 298 Or App at 794, 800 (finding substantial evidence for order regarding addicted parent "not able to stay clean and sober" who admitted he had "no good excuse" to have failed to engage in treatment). At least as to mother, the four-part standard for a psychological evaluation was satisfied.

C.  *Psychological Evaluation of Father*

The same conclusion cannot be reached as to father's psychological evaluation. In the prior juvenile case in 2016, father had self-referred for a mental-health assessment, and he had expressed some concerns, but DHS's witness Hire testified that those records were old and that DHS did not rely on them to make determinations in this case. In contrast to mother, father had successfully completed drug and alcohol treatment. He had also successfully completed parental training. There was no present indication of substance abuse by father. DHS characterized him as not being protective of R when with her and when not. Father had moved away to attend to his 91-year-old father. Father was not engaging in services. He was reported to be angry at DHS, but DHS had no evidence to infer a potential that a disorder contributed to that anger. Hire did not venture any reasons why father was uncooperative. She had not had contact with father since the inception of the current case in 2020.

Except in broad, generic terms that made no reference to father, DHS did not offer testimony how a psychological evaluation related to father's need for services. Absent something more specific, DHS failed to offer evidence upon which the juvenile court could have made a finding that a psychological evaluation was a predicate component to treatment or training. Accordingly, the juvenile court lacked the requisite evidence to make a finding necessary to direct father's participation in a psychological evaluation.

D.  *Other Dispositional Orders*

Finally, we address mother's challenges to the court's authority to issue orders for consistent visitation, obtaining safe and stable housing, signing information releases, and completing a "protective capacity assessment." We address each in turn.

The court's authority to direct visitation is expressed in ORS 419B.337(3): "The court may make an order regarding visitation by the ward's parents or siblings." Accordingly, the juvenile court may direct a parent's visitation with a child.

As for information releases, mother's counsel elicited testimony from Hire that mother had already signed the information releases for her own records and for medical records—after R's removal and prior to the jurisdictional hearing. On appeal, mother does not suggest a controversy remaining other than those releases that she had already signed. Seemingly, the record would indicate that mother had already knowingly and intentionally waived objection to the releases DHS sought. *See State v. Hunter*, 316 Or 192, 201, 850 P2d 366 (1993) (waiver is the intentional relinquishment of a known right, for which there is no particular formula).

Mother does not develop an argument beyond a summary conclusion. She does not specify what records are at issue, whether future records may be sought, what information the releases purport to provide, or what added legal concerns might be involved. *See Walters v. Hill*, 221 Or App 357, 361, 189 P3d 1273 (2008) (rejecting cursory argument citing no relevant rules or statutes as presenting no developed argument). Assuming information releases remain at issue, we conclude that such directions are part of a plan of services "to parents" under ORS 419B.337(2), "compliance" with which will be reviewed under ORS 419B.476 at the time of any permanency hearing. To the extent that any issue is presented on this limited record, the court did not lack authority to give such directions to elicit cooperation in the service plan. We do not, however, preclude a different answer if presented with a developed record and argument.

As for the direction to cooperate in finding stable housing, essentially the same conclusion follows. Mother asserted a summary conclusion without examination of statutes or any developed argument. Again, such directions are part of a plan of services "to parents" under ORS 419B.337(2), "compliance" with which will be reviewed under ORS 419B.476 at the time of any permanency hearing. To

the extent that any issue on this limited record is presented about the juvenile court's direction to mother to cooperate in finding housing, the court did not lack authority to give such direction. We do not, however, preclude a different answer if presented with a developed record and argument.

Finally, as for the "protective capacity assessment," Hire explained the purpose of the assessment was to gather information from parents themselves, concerning their background and their parenting behavior. With that purpose, the assessment is justified as information-gathering that serves to tailor needed services. As such, the assessment rests on the same authority as does a psychological evaluation but without the same depth or breadth of intrusion. No psychological testing or professional evaluation of potential psychological disorders is involved. The staff's assessment of the parents' protective capacity is the equivalent of a timely, relevant, focused interview with a parent, given a history of neglect of R's developmental needs. In that light, we recognize that mother is subject to the jurisdiction of the court (ORS 419B.803; ORS 419B.875(1)(a)(B); ORS 419B.385); that use of the assessment serves as a component of prescribing the services to be provided (ORS 419B.337(2); ORS 419B.343(1)(a); ORS 419B.387); and that substantial evidence supported the court's direction that mother cooperate in providing such information to assist the determination of services that she most needs.

## V.   CONCLUSION

We conclude that the juvenile court did not err in taking dependency jurisdiction. The court did not err in its dispositional judgment that approved a plan of services that directed mother to participate in a psychological evaluation. However, the court erred in directing father to participate in a psychological evaluation. Mother failed to show that the court erred in directing her cooperation in the other challenged aspects of the plan. We affirm the jurisdictional judgment, affirm the dispositional judgment as to mother, but reverse and remand as to the psychological evaluation of father.

Jurisdictional judgment affirmed; dispositional judgment affirmed in part, reversed and remanded in part.

**MOONEY, J.,** concurring in part, dissenting in part.

The juvenile court ordered R's parents to submit to psychological evaluations at the conclusion of the dispositional hearing. I agree that one of those orders was lawful and that one was not. The court explained that it did not believe that it was required to cite to any particular statutory provision and that it was issuing the orders on the basis of its authority under the "overarching general statutes" to address the needs and issues of the ward and her family. It nevertheless went on to say that it was relying on ORS 419B.337 and ORS 419B.387. When pressed by counsel, the court explained that it was "walking the line." It made a rational relationship finding under ORS 419B.337(2), and it concluded that the dispositional hearing was an "evidentiary hearing" under ORS 419B.387.

This case illustrates the confusion that we have created through our case law, and it exemplifies the type of inconsistent outcomes that result from that confusion. The confusion persists despite the efforts of juvenile court judges and lawyers who tread carefully through the juvenile code and our case law, striving to follow the law when psychological evaluations are requested. But today the majority refuses to remove the confusion and uncertainty when it declines to overrule *State ex rel Juv. Dept. v. G. L.*, 220 Or App 216, 185 P3d 483, *rev den*, 345 Or 158 (2008). The majority amplifies the confusion in the name of *stare decisis* by issuing an opinion that defers to prior cases that were wrongly decided. It professes to "harmonize" but, importantly, does not identify the melody it attempts to complement. I would confront the language of the code that was enacted by the legislature to govern judicial decisions in dependency cases. It is a matter of statutory—not musical—interpretation. Our goal should be to clearly state what the law is; not simply to arrange pieces of the law in a pleasing way. And, because our interpretation of ORS 419B.337 in *G. L.* and its progeny is plainly wrong, we have an obligation to correct our prior interpretation. *See State v. Olive*, 259 Or App 104, 107-08, 312 P3d 588 (2013) (explaining when *stare decisis* must give way in a case involving the interpretation of a statute).

We sought to explore the respective roles of ORS 419B.337(2) and ORS 419B.387 in the context of court-ordered psychological evaluations as far back as *G. L.* itself, when we invited the parties to provide additional briefing on ORS 419B.387. They declined to do so. 220 Or App at 221 n 3. In the years since *G. L.* was decided, we have applied both ORS 419B.337(2) and ORS 419B.387 as the basis for court-ordered psychological evaluations. In doing so, we have created confusion about the legal standard to apply and about the proof requirements that must be met before parents may be ordered to submit to psychological evaluations. In our most recent case, the panel majority acknowledged "the lack of clarity in the statutes and the case law concerning the court's authority to require a parent to submit to a psychological evaluation." *Dept. of Human Services v. F. J. M.*, 312 Or App 301, 312, 493 P3d 59, *rev allowed*, 368 Or 510 (2021). The dissenting member of that panel wrote that,

> "until and unless we receive some Supreme Court guidance regarding the proper construction of ORS 419B.337(2) and ORS 419B.387 with respect to parental psychological evaluations in juvenile dependency cases, we will only continue to dig ourselves deeper into a hole."

*Id.* at 315 (Aoyagi, J., dissenting). Not long before that, we declined plain-error review in a case where the father was ordered to submit to a psychological evaluation, concluding that ORS 419B.337 and ORS 419B.387 provide "two potential sources of statutory authority for a psychological evaluation." *Dept. of Human Services v. L. J. W.*, 302 Or App 126, 128, 460 P3d 540, *rev den*, 367 Or 75 (2020).[1] I would remove

---

[1] We recently cited *L. J. W.* as concluding that "[t]here are two statutes under which a juvenile court may order a parent to participate in a psychological evaluation in connection with a dependency case: ORS 419B.387 and ORS 419B.337(2)." *Dept. of Human Services v. M. O. B.*, 312 Or App 472, 474 n 1, 493 P3d 553 (2021). But we did so in a footnote included solely for the purpose of explaining why we were declining to address the father's argument that *G. L.* was plainly wrong and should be overruled. In fact, we declined plain-error review in *L. J. W.* precisely because the law is neither obvious nor certain given that we have treated ORS 419B.337(2) and ORS 419B.387 as "potential" sources of statutory authority for psychological evaluations. In other words, our statement about *L. J. W.* in *M. O. B.* did not fully capture what *L. J. W.* stated, and, when considered in conjunction with what *L. J. W.* in fact stated, cannot be understood as an affirmation that both statutes supply authority for ordering a psychological evaluation.

the uncertainty and confusion today by overruling *G. L.* as plainly wrong. I offer this separate opinion to explain why.[2]

In addition to addressing father's first assignment of error and mother's tenth assignment of error, which challenge the court-ordered psychological evaluations—the focus of this separate opinion—I disagree with the majority's rejection of mother's eleventh (requiring her to obtain safe and stable housing), thirteenth (requiring her to sign all requested releases of information), and fourteenth (ordering her to submit to a protective capacity assessment "and follow recommendations") assignments of error. Mother argues that the juvenile court erred in ordering her to "perform those tasks in the absence of statutory authority in the juvenile code to do so." The Department of Human Services (DHS) counters that the court "had inherent authority" to issue those orders. But the briefing on the issue was not as developed as it might have been, with the parties' focus being primarily on the question of court-ordered psychological evaluations.

To say, as mother does, that the juvenile court may only issue orders expressly provided for in the juvenile code itself is as extreme as saying, as DHS does, that the juvenile court has inherent authority to issue any and all orders it deems necessary to protect wards of the court. Neither argument rings entirely true. Psychological evaluations are not mentioned in ORS chapter 419B, and yet mother does not argue that the court is altogether without authority to order her to submit to such an evaluation. And, certainly, one can imagine any number of orders that a juvenile court would simply not have the authority to issue in a dependency case.

The majority describes the juvenile court's authority, but it does not actually resolve the tension between the parties' respective positions on inherent authority versus express statutory authority. Additional briefing might have been helpful on that point. But, in any event, I would not

_____

[2] I have no quarrel with the facts recited by the majority. I agree that the evidence was sufficient to support the court's assertion of jurisdiction over R. I agree with the majority's disposition of mother's twelfth assignment of error, which challenges the court's order that she maintain consistent visitation with R, and, therefore, do not address that assignment in this separate opinion.

affirm the housing order without some evidence that it was not ordered solely on the basis of parental homelessness. And an order to sign "all requested releases of information" is, at a minimum, overly broad, and, as such, raises statutory and constitutional questions about privacy, consent, and waiver. The order for a protective capacity assessment by itself is not necessarily concerning from a sufficiency of the evidence standpoint, but the order to "follow recommendations" raises questions about the court's authority to delegate its judicial decision-making authority to third parties. I would not affirm those orders on this record.

At the core of the parties' dispute concerning the court-ordered psychological evaluations is a fundamental disagreement about the source of the juvenile court's authority, the applicable standard, and evidentiary requirements necessary to order parents to submit to psychological evaluations. I begin with ORS 419B.337(2), first "examining the text of the statute in its context, along with relevant legislative history, and, if necessary, canons of construction." *State v. Cloutier*, 351 Or 68, 75, 261 P3d 1234 (2011). That is because "the text of the statutory provision itself is the starting point for interpretation and is the best evidence of the legislature's intent." *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610, 859 P2d 1143 (1993); *see also Hollister*, 305 Or App 368, 371-72, 470 P3d 436 (2020). Here, the text leaves nothing to the imagination:

> "The court may specify the particular type of care, supervision or services to be provided by the Department of Human Services *** to the parents or guardians of the ward[], but the actual planning and provision of such care, supervision or services is the responsibility of the department."

ORS 419B.337(2).

ORS 419B.337(2) is declaratory. As grammatically structured, it says that (1) the court may "specify" services, (2) that DHS will provide. It goes on to define parents or guardians as the recipient of those services, but ORS 419B.337(2) does not say that (1) the court may "specify" services, (2) that the parents shall submit to. ORS 419B.337(2) does not authorize direct orders to parents. In fact, we have held that ORS 419B.337 confers fairly limited power on the

juvenile court to indicate the types of services DHS must offer, as distinct from directing generally what DHS must do. *See Dept. of Human Services v. S. E. K. H. / J. K. H.*, 283 Or App 703, 709-10, 389 P3d 1181 (2017) (juvenile court lacked authority under ORS 419B.337 to direct DHS to make particular placement).

Although, by its plain terms, ORS 419B.337 does not authorize orders directed at parents, including orders requiring them to participate in psychological evaluations, a different statute, with its own standard, does. In *Dept. of Human Services v. D. R. D.*, 298 Or App 788, 790, 450 P3d 1022 (2019), we held that ORS 419B.387 "authorizes the juvenile court to order a parent to participate in treatment or training, but conditions that authority on a finding of need, following an evidentiary hearing." ORS 419B.387 provides:

> "If the court finds in an evidentiary hearing that treatment or training is needed by a parent to correct the circumstances that resulted in wardship or to prepare the parent to resume the care of the ward, the court may order the parent to participate in the treatment or training if the participation is in the ward's best interests."

The if-then structure of ORS 419B.387 is clear: "If the court finds [X], the court may order the parent to [Y]."

But we declined an invitation in *D. R. D.* to overrule *G. L.,* because the court-ordered psychological evaluation in *D. R. D.* was based on ORS 419B.387 and not on ORS 419B.337(2), so we had no occasion to address the role, if any, of ORS 419B.337. *D. R. D.*, 298 Or App at 796 n 3. We held that a "psychological evaluation—*as a component of treatment or training*—is authorized under ORS 419B.387." *Id.* at 799 (emphasis in original). We cautioned that a psychological evaluation should not be used as a discovery tool to determine "*if* there is a need for treatment or training. Rather, as the statute sets forth, it is the establishment of a need for treatment or training at the evidentiary hearing that then creates the court's authority to order a parent to comply with that treatment or training." *Id.* at 799-800 (emphasis in original). We affirmed the court-ordered psychological evaluation in *D. R. D.* because the need for it was

established at an evidentiary hearing as a component of the father's drug treatment. *Id.* at 800. *D. R. D.* did not overrule *G. L.* In the short time that has passed since we decided *D. R. D.*, we have declined to address the question left open—whether *G. L.* correctly determined that ORS 419B.337 provided authority for a court-ordered psychological evaluation—in at least four cases. *See L. J. W.*, 302 Or App at 132 (declining plain-error review of court-ordered psychological evaluation given two alternate sources of authority for such an evaluation); *Dept. of Human Services v. D. L.*, 303 Or App 286, 288, 462 P3d 781, *rev den*, 367 Or 257 (2020) (plain-error review was foreclosed by our holding in *L. J. W.*); *Dept. of Human Services v. D. M.*, 307 Or App 456, 456, 476 P3d 125 (2020), *rev den*, 367 Or 535 (2021) (affirming court-ordered psychological evaluations and citing *L. J. W.*); *F. J. M.*, 312 Or App at 312 (affirming court-ordered psychological evaluation under ORS 419B.387 and acknowledging that we rejected an unpreserved challenge to the court's authority in *L. J. W.* because there are two potential standards under ORS 419B.337 and ORS 419B.387).

This case presents the opportunity to answer the question left open in *D. R. D.* and, further, to correct our misstep in *G. L.* I do not fault the *G. L.* court for making the misstep that it did; it appears that the parties to the case never questioned that ORS 419B.337 supplied a source of authority for a court-ordered psychological evaluation, undoubtedly contributing to the court's reliance on what turns out to be an unfounded assumption about the operation of the juvenile code. But the issue is now squarely before us, and we are obliged to construe the statutes as written, not construct new law upon the shaky foundation of an incorrect assumption.

But that is precisely what the majority opinion does. To be sure, the majority opinion goes to great lengths to incorporate the requirements of ORS 419B.387 into its final conclusion about what it takes to authorize a direct order to parents to submit to psychological evaluations. But it holds on to *G. L.* with unwavering allegiance and, in so doing, effectively rewrites the statutory scheme crafted by the legislature, something we have an affirmative obligation

*not* to do: "In the construction of a statute, the office of the judge is simply to ascertain and declare what is, in terms or in substance, contained therein, not to insert what has been omitted, or to omit what has been inserted * * *." ORS 174.010.

The standard for overruling a prior case as "plainly wrong" is stringent and is not satisfied merely because we might disagree with the result reached by our predecessors: "[D]ue regard for *stare decisis* and our predecessors' collegial commitment demands that 'plainly wrong' be a rigorous standard, satisfied only in exceptional circumstances." *State v. Civil*, 283 Or App 395, 396, 416-18, 388 P3d 1185 (2017). In other words, we may not substitute our thinking for the thinking of those who served on this court before us simply because we are confident that we are right. But where, as here, we employ the standard mode of statutory construction, and cannot reconcile the text of ORS 419B.337(2) with *G. L.*'s assumption and implicit conclusion that the statute authorizes court-ordered psychological evaluations for parents, then we are obligated to reach a correct interpretation of the statute, declare that *G. L.* is plainly wrong, and overrule it. *See id.*; *Assoc. Unit Owners of Timbercrest Condo. v. Warren*, 352 Or 583, 598, 288 P3d 958 (2012).

We have noted that, "[w]hatever the ultimate meaning of 'plainly wrong,' to be 'plainly wrong' a holding must first be wrong." *Civil*, 283 Or App at 406. As we have already explained, *G. L.* was wrongly decided because the words in ORS 419B.337(2) do not support the meaning attributed to them by the majority. ORS 419B.337(2) authorizes the court to direct the types of services that DHS must offer to parents. It says nothing about the power to order parents to do anything. The words of the statute are directed to the court's power to manage *DHS*'s conduct, not at the power to manage the conduct of a parent.

ORS 419B.387 provides some context and is significant to a proper understanding of ORS 419B.337. It shows that, when the legislature intended to authorize a juvenile court to order a parent to take a particular action, it knew how to do so and it did so. More importantly, the plain text of ORS 419B.387 shows that the legislature established

standards for issuing orders to parents to participate in "treatment or training": (1) an evidentiary hearing; (2) a finding "that treatment or training" is needed by a parent to correct the circumstances that resulted in wardship or to prepare the parent to resume the care of the ward; and (3) a finding that it is in the ward's best interest for the parent to participate in the treatment or training.

G. L. set a standard for ordering parents to submit to psychological evaluations—a rational relationship to the jurisdictional bases—that falls short of the requirements set forth in ORS 419B.387 and has potential constitutional implications. It is not incorrect that services offered to parents must be rationally related to the jurisdictional bases. As a practical matter, there *must be some connection* between a court's orders and the case in which the orders are issued, and the court cannot order DHS to provide a psychological evaluation unless there is a rational relationship. But *G. L.*'s conclusion that a rational relationship alone would support ordering parents to submit to psychological evaluations in a dependency case was incorrect.

A court-ordered psychological evaluation is forensic. It is not the result of a private, informed-consent discussion between a patient and his or her chosen family physician, psychologist, therapist, or mental health provider. It is instead a mental health evaluation requested by DHS, a government agency, and ordered by the court, acting with the authority of the judicial branch of government. A court-ordered psychological evaluation represents a significant, unconsented intrusion by the state into the life and psyche of the person subjected to it. Failure to comply with the court's order could result in contempt proceedings and, more significantly, permanent disruption of the family and loss of one's children.

Moreover, psychological evaluations might differ depending upon a host of variables, such as the administering practitioner's credentials and licensure, institutional or clinical protocols, tests and inventories administered, whether third-party interviews are conducted, questions asked, and observations made. Although we concluded that the psychological evaluation ordered in *D. R. D.* was justified

as a component of treatment or training needed to address the underlying reasons for wardship and to help prepare the parent to resume care of his child, a court may reach a different conclusion on a different record in a different case. It might also reach the same conclusion but require entry of an appropriate protective order to ensure protection of the parents' privacy or to limit the use of the evaluation to the purpose for which it was sought and ordered—to assist with the process of reunification.

Given the nature of the intrusion and the innate variability of the evaluation that is the mechanism of intrusion, it is difficult to conclude that the privacy and parental liberty interests protected by the state and federal constitutions could be authorized on a rational relationship basis without the additional findings required under ORS 419B.387. I am not alone in making observations like these.[3]

I would hold that the juvenile court may order a parent to participate in a psychological evaluation under ORS 419B.387 if, after conducting an evidentiary hearing, the court determines that (1) "treatment or training" is needed to correct an adjudicated basis of jurisdiction or to prepare the parent to resume the child's care; (2) the requested psychological evaluation is itself the needed "treatment or training" or a component of the needed "treatment or training" program; and (3) the parent's participation in the requested evaluation is in the child's best interests. The majority includes a "rational relationship" finding in its ultimate test for court-ordered psychological evaluations. It would be difficult to disagree with the proposition that any time a court issues a direct order to a party, it must have some rational relationship to the pending case. But the majority need not add "rational relationship" as a separate element of the test because it is covered by the requirement that the requesting party prove that "treatment or training" is needed to correct an adjudicated basis of jurisdiction or to prepare the parent

---

[3] *See, e.g., In re T. R.*, 557 Pa 99, 108, 731 A2d 1276, 1281 (1999) ("Compelling a psychological evaluation in this context is nothing more or less than social engineering in derogation of constitutional rights, and where, as here, there is an abundance of information about the ability of the parent to be a parent, there is no state interest, much less a compelling state interest, in the ordering of parental psychological evaluations.").

to resume the child's care. Inclusion of a "rational relationship" prong is duplicative and unnecessary and, it seems to me, simply part of the spackling compound applied by the majority as it smooths over and harmonizes conflict instead of acknowledging our prior mistake based on an unfounded assumption that no one questioned at the time.

I concur in part and, respectfully, dissent in part.

Egan, C. J., and Ortega, Lagesen, James, and Aoyagi, JJ., join in this concurrence in part, dissent in part.