Submitted May 1, reversed and remanded July 8, 2020

In the Matter of
Jones David HOLLISTER,
*Petitioner-Appellant.*

Lane County Circuit Court
19CV20980; A171609

470 P3d 436

Pursuant to ORS 33.460, petitioner filed an application to change their legal sex from female to nonbinary. In support of that application, petitioner filed an attestation that they had undergone surgical, hormonal, or other treatment appropriate for the purpose of affirming petitioner's gender identity. The circuit court denied the application, stating that petitioner's request for a legal change of sex from female to nonbinary was inconsistent with the wording of ORS 33.460. Petitioner appealed the resulting judgment. *Held*: The circuit court erred in concluding that it lacked authority under ORS 33.460 to approve petitioner's application for a legal change of sex from female to nonbinary. Having reviewed the text and context of ORS 33.460, the Court of Appeals concluded that, when an applicant complies with the attestation requirements of ORS 33.460, the circuit court's authority to grant the requested change of legal sex is not restricted to male or female; rather, the new sex designation must affirm the petitioner's gender identity whether that is male, female, or nonbinary.

Reversed and remanded.

Charles D. Carlson, Judge.

Lorena Reynolds filed the brief for appellant.

Sara Kobak, Jessica A. Schuh, Schwabe, Williamson & Wyatt, P.C., Kelly K. Simon, and American Civil Liberties Union Foundation of Oregon, Inc., filed the brief *amicus curiae* for Basic Rights Oregon and American Civil Liberties Union of Oregon.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Jonathan N. Schildt, Assistant Attorney General, filed the brief *amicus curiae* for State of Oregon.

Bruce L. Campbell, John C. Clarke, and Miller Nash Graham & Dunn LLP filed the brief *amicus curiae* for Transgender Law Center, interACT, and Beyond Binary Legal.

Caitlin V. Mitchell filed the brief *amicus curiae* for Law Professors.

Before DeVore, Presiding Judge, and Mooney, Judge, and Hadlock, Judge pro tempore.

MOONEY, J.

Reversed and remanded.

**MOONEY, J.**

This case presents a question of first impression. Does ORS 33.460 permit the circuit court to grant a legal change of sex from male or female to nonbinary? The circuit court concluded that the statute does not permit such a change, and it denied petitioner's application under ORS 33.460. Petitioner filed this appeal, which is unopposed and supported by four *amicus curiae* briefs. The issue is one of statutory construction, and we are called upon to review the trial court's ruling for legal error, keeping in mind that, although the appeal is unopposed, we must correctly interpret the statute. *Oregon Shores v. Board of County Commissioners*, 297 Or App 269, 275, 441 P3d 647 (2019); *Stull v. Hoke*, 326 Or 72, 77, 948 P2d 722 (1997). We conclude that, when an applicant complies with the attestation requirements of ORS 33.460, the circuit court's authority to grant the requested change of legal sex is not restricted to male or female; rather, the new sex designation must affirm the petitioner's gender identity whether that is male, female, or nonbinary. We reverse and remand.

Pursuant to ORS 33.460, petitioner filed an application to change petitioner's legal sex from female to nonbinary. In support of that application, petitioner filed an attestation that they[1] had undergone surgical, hormonal, or other treatment appropriate for the purpose of affirming petitioner's gender identity. The circuit court held a hearing on the application. Petitioner argued that, having complied with the statutory attestation requirement, they were entitled to have their application granted. They argued further that "nonbinary" is the sex designation that affirms their gender identity and that they used the form supplied by the Oregon Judicial Department, Office of State Court Administrator, which provides the options of male, female, and nonbinary as sex designations to which petitioner may request change. Petitioner argued that using male and female as the only options under ORS 33.460 places them in the position of

---

[1] Petitioner uses the pronouns "they," "them," and "their" for self-reference because those pronouns are consistent with petitioner's gender identity as neither male nor female, but rather as nonbinary. We use those pronouns throughout this opinion in reference to petitioner.

having to give false or inconsistent answers on forms that require truthful answers. Petitioner specifically argued:

> "So the problem is, though, that then you have a birth certificate that says one thing. You have a—you have a DMV license that says one thing, but you don't have a legal designation, and so that puts people in these binds with what is their legal—what is their—what are they supposed to check for those boxes?

> "And for my client, checking either box is a lie. They don't identify as male or female, and so for them to be having to check one of those boxes is not an accurate reflection of what—of what their experience.

> "And so it's asking them to say something that is not true every time they have to fill out those boxes."

The circuit court took the matter under advisement and later issued its written order and general judgment denying petitioner's application. In the order, the court reviewed the text, context, and legislative history of ORS 33.460 and concluded that it "may not issue a General Judgment for change of sex to nonbinary." In explaining its decision, the court focused on the inclusion of both "sex" and "gender" in the statute, noting that, while those words "are not defined in the context of [ORS 33.460,] the language chosen by the legislature clearly addresses a change of sex rather than gender." It rejected petitioner's request for a change of sex from female to "nonbinary" as inconsistent with the "present wording of the 'sex' change statute."

Petitioner appeals, arguing as they did before the circuit court that ORS 33.460, by its terms, allows a circuit court to change a person's legal sex to nonbinary. Petitioner also advances an as-applied constitutional challenge to ORS 33.460 under the First and Fourteenth Amendments to the United States Constitution and Article I, section 20, of the Oregon Constitution. Petitioner did not fully develop those constitutional challenges and, because they are not necessary to the resolution of this appeal, we do not address them.

Whether ORS 33.460 allows for a legal change of sex to nonbinary is a question of statutory construction. We "review for legal error by employing the methodology set out

in *PGE v. Bureau of Labor and Industries*, 317 Or 606, 611, 859 P2d 1143 (1993), and *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009)." *State v. Corcilius*, 294 Or App 20, 21, 430 P3d 169 (2018). *PGE* and *Gaines* require us to ascertain the meaning of the statute most likely intended by the legislature that adopted it. *State v. Cloutier*, 351 Or 68, 75, 261 P3d 1234 (2011). We do that "by examining the text of the statute in its context, along with relevant legislative history, and, if necessary, canons of construction." *Id.* Generally, "the text of the statutory provision itself is the starting point for interpretation and is the best evidence of the legislature's intent." *PGE*, 317 Or at 610. And so we begin with the text of ORS 33.460, as amended in 2017:

> "(1)   Application for legal change of sex of a person may be heard and determined by any circuit court in this state. A circuit court may order a legal change of sex and enter a judgment indicating the change of sex if the individual attests that the individual has undergone surgical, hormonal or other treatment appropriate for the individual for the purpose of affirming gender identity.
>
> "(2)   The court may order a legal change of sex and enter the judgment in the same manner as that provided for change of name of a person under ORS 33.410.
>
> "(3)   If a person applies for a change of name under ORS 33.410 at the time the person applies for a legal change of sex under this section, the court may order change of name and legal change of sex at the same time and in the same proceeding."

The key language is that a court may order a legal "*change of sex*" and enter a judgment reflecting that change, if the applicant "*attests*" that the applicant has undergone "*treatment*" that is "*appropriate for * * * the purpose of affirming gender identity*." (Emphases added.) When it denied the legal sex change, the circuit court essentially concluded that the "gender identity" of nonbinary does not correspond with a legally available "sex" designation. As we explain, because the authority to grant a legal sex change arises upon the filing of an attestation that the applicant has undergone treatment for the purpose of affirming gender identity, the legal change must be to a sex designation that reflects the applicant's affirmed gender identity.

When interpreting a statute, we give "words of common usage" their "plain, natural, and ordinary meaning." *PGE*, 317 Or at 611. Generally, we presume that the ordinary meaning of a word is reflected in a dictionary. *State v. Murray*, 340 Or 599, 604, 136 P3d 10 (2006). While Oregon courts generally rely on *Webster's Third New International Dictionary*, *Kohring v. Ballad*, 355 Or 297, 304 n 2, 325 P3d 717 (2014), consulting several dictionaries, including dictionaries contemporaneous with the enactment of a statute, better ensures that a court determines a word's "ordinary" usage and avoids the possibility that dictionary selection affects the outcome. *See* Jack L. Landau, *Oregon Statutory Construction*, 97 Or L Rev 583, 651-61 (2019) (discussing how Oregon courts use dictionaries to determine a word's ordinary meaning when identifying the legislature's intent). Given the evolving lexical information concerning the key words and phrases here, we review them not only in *Webster's* dictionary, but also in dictionaries with relevant scientific, professional, and contemporary focus that were available in 2017.

First, the noun "sex" is defined as (1) "one of the two divisions of organic [especially] human beings respectively designated male or female"; and (2) "the sum of the morphological, physiological, and behavioral peculiarities of living beings that subserves biparental reproduction ***, that in its typical dichotomous occurrence is [usually] genetically controlled and associated with special sex chromosomes, and that is typically manifested as maleness and femaleness." *Webster's* at 2081 (unabridged ed 2002). *The American Heritage Dictionary of the English Language* 1605 (5th ed 2011) (*American Heritage*) provides similar definitions: (1) "Either of the two divisions, designated female and male, by which most organisms are classified on the basis of their reproductive organs and functions"; (2) "The fact or condition of existing in these two divisions, especially the collection of characteristics that distinguish female and male"; (3) "Females or males considered as a group"; (4) "One's identity as either female or male"; (5) "The genitals." According to *Merriam-Webster Unabridged Dictionary* (*Merriam-Webster*), the first known use of "sex" dates back to the fourteenth century. *Sex*, Unabridged. Merriam-Webster.com (last updated Apr 2016).

Second, "gender," also a noun, is defined as (1) "sex"; (2) "any of two or more subclasses within a grammatical class of a language * * * that are partly arbitrary but also partly based on distinguishable characteristics such as * * * sex." *Webster's* at 944. *American Heritage* defines "gender" as (1) "A grammatical category, often designated as male, female, or neuter, used in the classification of nouns, pronouns, adjectives, and, in some languages, verbs that may be arbitrary or based on characteristics such as sex"; (2) "a. Either of the two divisions, designated female and male, by which most organisms are classified on the basis of their reproductive organs and functions; sex. b. One's identity as female or male or as neither entirely female nor entirely male. c. Females or males considered as a group." *Id.* at 730. *Merriam-Webster*, which builds on the foundation of *Webster's*, adds, "the behavioral, cultural, or psychological traits typically associated with one sex." *Gender*, Unabridged.Merriam-Webster.com (last updated Apr 2016). Use of the word "gender" also dates back to the fourteenth century. *Id.*

"Gender identity," also a noun, is not defined in *Webster's*. It does, however, appear in *Merriam-Webster*, which defines the term as "a person's internal sense of being male, female, some combination of male and female, or neither male nor female." *Gender Identity*, Unabridged.Merriam-Webster.com (last updated Apr 2016). The American Psychological Association (APA) defines "gender identity" as "an individual's identification as male, female, or, occasionally, some category other than male or female." *Diagnostic and Statistical Manual of Mental Disorders* 1636-37 (5th ed 2013). Its first known use was in 1964. *Gender Identity*, Unabridged.Merriam-Webster.com.

The term "nonbinary" is not mentioned in ORS 33.460. But because it is the gender identity to which petitioner seeks to change, we note that the term "nonbinary" is now, and was in 2017, well understood to encompass the gender identity of one who identifies as neither entirely male nor entirely female, as modern dictionaries and other sources show. As with "gender identity," *Webster's* does not define the term "nonbinary." But, again, it is defined in *Merriam-Webster* to mean "relating to or being a person

who identifies with or expresses a gender identity that is neither entirely male nor entirely female." *Nonbinary*, Unabridged.Merriam-Webster.com (last updated Apr 2016). "Nonbinary" is an adjective that, like "male" and "female," can describe a person's sex, gender, or gender identity.

Those definitions provide a helpful springboard for the analytic process of interpreting the statute and the legislature's intent because, of course, we "do not simply consult dictionaries and interpret words in a vacuum." *Cloutier*, 351 Or at 96. Where, as here, the dispute "centers on the meaning of a particular word or words, a dictionary definition—although providing some evidence of meaning—should not be relied on to resolve a dispute about plain meaning without critically examining how the definition fits into the context of the statute itself." *State v. Gonzalez-Valenzuela*, 358 Or 451, 461, 365 P3d 116 (2015).

> "[A] statute's plain meaning is frequently more than the sum of its individually defined terms. Dictionary definitions lack context and often fail to capture the nuanced connotations conveyed by the normal use of a term in a particular context. Those more nuanced connotations may represent the plain meaning of a term in context even though those connotations result from tacit knowledge, accumulated experience, and common sense that are not reflected well—if at all—in dictionary definitions. As a result, dictionaries are only the starting point for our textual analysis and should not be used as the ending point."

*Id.* at 461-62 (internal citations omitted).

"The relationship between 'sex' and 'gender' is more complicated than [the dictionary] definitions suggest." Shelby Hanssen, *Beyond Male or Female: Using Nonbinary Gender Identity to Confront Outdated Notions of Sex and Gender in the Law*, 96 Or L Rev 283, 285 (2017) (detailing the relationship between sex and gender identity and describing the complexities of categorization by chromosomes, genitalia, or gender identity as it pertains to the nonbinary, genderqueer, transgender, and intersex communities). Historically, limiting the definition of "sex" to "male" and "female" might have seemed reasonable given references to "biparental reproduction" and the "typical dichotomous occurrence" of "sex chromosomes" as expressed in *Webster's*. The historical view of

"sex" as "male" or "female" is reflected even more recently, for example, Johns Hopkins University Medicine's Glossary of Transgender Terms defines "assigned sex at birth" as "[t]*he sex (male or female)* assigned to a child at birth, most often based on the child's external anatomy." Linell Smith, *Glossary of Transgender Terms* (Nov 20, 2018), https://www.hopkinsmedicine.org/news/articles/glossary-of-terms-1 (emphasis added). But, binary views of sex are not consistent with the wide range of well-documented natural variations of physical traits that do not match either a male or female sex designation.[2] *See* Anne Fausto-Sterling, *Sexing the Body: Gender Politics and the Construction of Sexuality* 30-39 (2000); Melanie Blackless *et al*, *How Sexually Dimorphic Are We? Review and Synthesis*, 12 Am J Hum Biol 151 (2000). Put another way, binary views of "sex" do not reflect the reality of well-documented occurrences of individual, biologic variations concerning the "sex" of individuals.

We now return to the text of ORS 33.460 with a greater understanding of the significance of the term "gender identity" as used in that statute:

> "A circuit court may order a *legal change of sex* and enter a judgment indicating the change of sex if the individual attests that the individual has undergone surgical, hormonal or other treatment appropriate for the individual *for the purpose of affirming gender identity*."

(Emphases added.) The legislature conditioned a legal change of sex on an applicant attesting to "treatment" that "affirms" the applicant's "gender identity." Gender identity, in turn, is not limited to "male" or "female," *see Gender Identity*, Unabridged.Merriam-Webster.com ("gender identity" means

---

[2] The APA notes that there is no simple way to quantify the number of people born with an intersex condition, because they are not always accurately diagnosed. Experts sometimes disagree on what qualifies as an intersex condition and government agencies do not collect statistics about intersex individuals. Despite those challenges with accurate quantification, "[s]ome experts estimate that as many as 1 in every 1,500 babies is born with genitals that cannot easily be classified as male or female." American Psychological Association, *Answers to Your Questions About Individuals With Intersex Conditions*, https://www.apa.org/topics/lgbt/intersex (accessed June 4, 2020); *see also* Julie A. Greenberg, *Defining Male and Female: Intersexuality and the Collision Between Law and Biology*, 41 Ariz L Rev 265 (1999) (noting that the then-recent medical literature indicated that approximately one to four percent of the world's population may be intersex).

"a person's internal sense of being male, female, *some combination of male and female, or neither male nor female*" (emphasis added)). Given, then, that an applicant's gender identity is the basis for the applicant's legal change of sex, it logically follows that, under ORS 33.460, legal sex designations cannot be limited to "male" or "female." The statute's requirement that the legal sex designation correspond to the applicant's affirmed gender identity strongly suggests that the option of "nonbinary" be available as a choice.

As we interpret ORS 33.460, we look also to related Oregon statutes, and especially those enacted simultaneously with it. *State v. Klein*, 352 Or 302, 309, 283 P3d 350 (2012); *Gaines*, 346 Or at 177 n 16. As discussed in more detail below, the legislature amended ORS 33.460 in 2017 through House Bill (HB) 2673. *See* Or Laws 2017, ch 100, § 3. In that bill, the legislature also amended ORS 432.235,[3] which allows a person to change the sex designation on the person's birth certificate. Both statutes use the same sentence structure. Under both ORS 33.460 and ORS 432.235, a change of *sex* is appropriate when the individual attests that the change is for the purpose of affirming the applicant's gender identity.

Although it does not strictly inform our statutory construction analysis, we note that the Oregon Health Authority's administrative rule, OAR 333-011-0272, implementing ORS 432.235 and effective January 1, 2018, allows

---

[3] ORS 432.235(3)(b) provides:

"Upon request, the state registrar shall amend a record of live birth that occurred in this state to *change the sex* of an applicant *** if:

"(A) The state registrar receives a certified copy of an order from a court of competent jurisdiction changing the sex of the applicant; or

"(B) The state registrar receives a request, on a form prescribed by the state registrar, from the applicant to *change the sex* that includes:

"(i) Documentation sufficient, as prescribed by the state registrar by rule, to allow the state registrar to confirm the identity of the applicant and identify the correct record of live birth to be amended;

"(ii) A statement signed by the applicant in which the applicant *attests*, as prescribed by the state registrar by rule*, to making the request for the purpose of affirming the applicant's gender identity*; and

"(iii) Any other documentation as required by the state registrar by rule."

(Emphases added.)

a person to change the sex listed on that person's birth certificate when "the sex on the [birth certificate] does not match the gender identity of the registrant" by affirming that "the sex currently appearing on the [birth certificate] is different than the registrant's gender identity and the sex designation requested supports the registrant's gender identity." Consistent with ORS 33.460, ORS 432.235 and OAR 333-011-1272 provide a mechanism to allow a change of sex designation on a person's birth certificate to conform to the person's gender identity.[4]

Prior versions of ORS 33.460 provide additional context. *Kohring*, 355 Or at 307-08. The statute was originally enacted in 1981 and, at that time, required a "surgical procedure" before a legal change of sex could be ordered. Or Laws 1981, ch 221, § 1. That requirement remained in place until 2013, when the legislature amended the statute to allow a court to order a legal change of sex "if the court determine[d] that the individual ha[d] undergone surgical, hormonal or other treatment appropriate for that individual for the purpose of gender transition and that sexual reassignment ha[d] been completed." Or Laws 2013, ch 366, § 52. Finally, the statute was amended in 2017 to its current form, which requires only that the applicant attest that they have undergone some form of "surgical, hormonal or other treatment" "for the purpose of affirming gender identity."

That evolution suggests to us that, when the statute was originally enacted, the legislature intended to limit a change of sex to "male" or "female" because a "surgical procedure" was required, reflecting an understanding of sex that was based upon male or female physical characteristics. In 2013, the legislature broadened the scope of the statute by also allowing a change of sex if the person had undergone hormonal or "other treatment" for the purpose of gender transition. At least one Oregon circuit court granted a sex change application to nonbinary under that statutory

---

[4] We also note that OAR 735-062-0013(3)(c), which allows a person to list a "sex" other than male or female on that person's driver's license, was promulgated shortly after the legislature passed HB 2673. It is consistent with our understanding of the legislative intention through its amendments to ORS 33.460 in 2017 to permit "nonbinary" as a sex designation on government-issued documents used for personal identification.

framework. *In the Matter of Jamie Shupe*, Multnomah County Circuit Court Case No. 16CV13991. However, the language of the statute as it existed in 2013 required the person's sexual reassignment to have been completed, suggesting that the legislature was continuing to tie legal sex to male and female physical characteristics. The legislature removed that requirement in 2017 and, in doing so, clarified its intent to expand the scope of the statute by shifting the focus away from physical anatomy to affirming gender identity.[5] To view the amendments otherwise would be to render them meaningless.

Having reviewed the text and context of ORS 33.460, we conclude that, when an applicant complies with the attestation requirements of ORS 33.460, the circuit court's authority to grant the requested change of legal sex is not restricted to male or female; rather, the new sex designation must affirm the petitioner's gender identity whether that is male, female, or nonbinary.[6] The circuit court erred in concluding that it lacked authority under ORS 33.460 to approve petitioner's application for a legal change of sex from female to nonbinary.

Reversed and remanded.

---

[5] We have reviewed the legislative history pertaining to the 2017 amendments provided by the parties. ORS 174.020; *Gaines*, 346 Or at 166. Although that history does not address the specific point, nothing in it indicates that the legislature intended to limit a requested legal sex change to a binary designation that does not reflect an applicant's gender identity. Instead, in the main, the history indicates an intention to make it easier for Oregonians to obtain a legal designation that reflects the applicant's gender identity. Because the legislative history does not materially affect our understanding of the legislature's intent, we do not discuss it further. *See Baldwin v. Seida*, 297 Or App 67, 73, 441 P3d 720, *rev den*, 365 Or 769 (2019) (court only required to consider "useful" legislative history provided by the parties).

[6] Petitioner and *amici* articulate various constitutional issues in addition to their statutory arguments. We need not, and do not, address those arguments because we have resolved the issue before us on the text and context of the statute.