Argued and submitted November 29, 2021, vacated and remanded
February 2, 2022

In the Matter of the Change of Name of
Andrew Thomas Jondle.

ANDREW THOMAS JONDLE,
*Petitioner-Appellant.*

Marion County Circuit Court
20CV21375; A174303

506 P3d 480

Petitioner—a transgender woman who is currently incarcerated—seeks judicial review of a circuit court judgment denying her petition for a change of legal name, ORS 33.410, and change of legal sex, ORS 33.460. The reason stated in the judgment for denying the petition was that it was "not in the public interest for petitioner's name and sex to be legally changed." *Held*: Under ORS 33.410 and ORS 33.460, a court may not deny a petition for change of legal name or sex as inconsistent with the "public interest" based merely on a petitioner's status as a convicted or incarcerated individual; rather, a court may deny a petition for change of legal name or sex only where the record contains evidence that the change of legal name or sex is inconsistent with the "public interest"—that is, where the record contains evidence that the change of legal name or sex is sought for some purpose harmful to the wellbeing of the general public, including, but not limited to, fraud, dishonesty, misrepresentation, evading creditors, or interfering with the rights of others. Neither the circuit court's judgment denying petitioner's change of legal name and sex nor the record contained any factual bases for determining that petitioner's change of legal name and sex was inconsistent with the public interest.

Vacated and remanded.

Tracy A. Prall, Judge.

Sara Kobak argued the cause for appellant. Also on the brief were Rosa Ostrom, Schwabe, Williamson & Wyatt, P.C., Kelly Simon, and ACLU Foundation of Oregon.

Ruben Medina and Law Office of Ruben Medina LLC filed the brief *amici curiae* for Basic Right Oregon, Beyond These Walls, Black & Pink PDX, Portland Community College—Clear Clinic, and Clackamas Indigent Defense Corporation.

Before Tookey, Presiding Judge, and Aoyagi, Judge, and Hadlock, Judge pro tempore.

TOOKEY, P. J.

Vacated and remanded.

**TOOKEY, P. J.**

This case requires us to interpret ORS 33.410 and ORS 33.460, which allow petitioners to apply for a change of legal name and a change of legal sex, respectively. Petitioner—a transgender woman who is currently incarcerated—seeks judicial review of a circuit court judgment denying her petition for a change of legal name and sex. The reason stated in the judgment for denying the petition was that it was "not in the public interest for petitioner's name and sex to be legally changed."

On appeal, petitioner assigns error to the denial of her petition. She argues that, under ORS 33.410 and ORS 33.460, the court may not deny a petition for change of legal name or sex as contrary to the public interest solely based on a petitioner's criminal convictions or incarceration, nor may it do so where the record contains no evidence that the change of legal name or sex is sought for a fraudulent or improper purpose.

As explained below, we conclude that, under ORS 33.410 and ORS 33.460, a court may not deny a petition for change of legal name or sex as inconsistent with the "public interest" based merely on a petitioner's status as a convicted or incarcerated individual; rather, a court may deny a petition for change of legal name or sex only where the record contains evidence that the change of legal name or sex is inconsistent with the "public interest"—that is, where the record contains evidence that change of legal name or sex is sought for some purpose harmful to the wellbeing of the general public, including, but not limited to, fraud, dishonesty, misrepresentation, evading creditors, or interfering with the rights of others. Applying that understanding, we further conclude that neither the circuit court's judgment denying petitioner's petition nor the record contains any factual bases for determining that petitioner's change of legal name and sex was inconsistent with the public interest. Consequently, we vacate the judgment as to the change of legal name and sex, and we remand to the trial court, where it will have the opportunity to engage in any necessary factfinding and to reconsider petitioner's petition in accordance with this opinion.

## I.   BACKGROUND

Petitioner is incarcerated with the Oregon Department of Corrections (DOC) based on her 2010 convictions for aggravated murder and burglary. During her time in custody, "petitioner came to recognize and accept that the male gender marker assigned to her at birth did not match her innate female gender identity." To "affirm her female gender identity and to facilitate her social gender transition," petitioner filed a petition to change her legal first name and her legal sex designation pursuant to ORS 33.410 and ORS 33.460.

In her petition, petitioner disclosed her 2010 convictions; provided her address as the DOC facility in which she is incarcerated; and attested, as required under ORS 33.460, that she had undergone "treatment appropriate to me for the purpose of affirming my gender identity." Neither DOC nor any other state agency, district attorney's office, or private party opposed the petition.[1] After petitioner submitted her petition, the circuit court did not hold a hearing on the petition, and it entered a judgment denying the petition.[2] The judgment stated as the basis for denial, "It is not in the public interest for petitioner's name and sex to be legally changed."

Petitioner now appeals—unopposed and supported by several *amici*—and she assigns error to the denial of her petition.[3] Petitioner argues that a circuit court may not deny

_____

[1] It is unclear who, if anyone, had notice of the petition. Neither ORS 33.410 nor ORS 33.460 contains any notice requirements.

[2] We note that petitioners using the OJD-provided form for a change of name or sex are apprised that they do not need to go to court after filing a petition "unless the court tells you to or sends you a hearing notice." *See Name and Sex Change (Adult) Packet*, https://www.courts.oregon.gov/forms/Documents/Name%20and%20Sex%20Change%20Packet%20(Adult).pdf (accessed Jan 24, 2022).

[3] Petitioner's legal arguments are supported by an *amicus curiae* brief filed on behalf of Basic Rights Oregon, Beyond These Walls, Black & Pink PDX, Portland Community College's CLEAR Clinic, and the Clackamas Indigent Defense Corporation. *Amici* describe how a transgender individual's change of legal name or sex benefits that individual's mental and physical wellbeing and the public safety and is endorsed by "[a]ll major medical organizations in the United States" as an appropriate treatment for many people experiencing gender dysphoria.

a petition under ORS 33.410 or ORS 33.460 as contrary to the public interest solely based on a petitioner's criminal convictions or incarceration, nor may it do so when the record contains no evidence that the change of legal name or sex is sought for a "fraudulent or improper purpose." Instead, petitioner argues, "the text, context, and legislative history of ORS 33.410 show that a circuit court has narrow authority to deny a petition to change legal name *** as inconsistent with 'the public interest' only where the court makes specific findings, supported by evidence in the record, that the petition is made for fraudulent or improper purposes, or otherwise would result in actual prejudice to others." Petitioner also argues that "the text, context, and legislative history of ORS 33.460 show that a circuit court has authority to deny a petition for change of legal sex designation only where the petitioner fails to provide a valid and legally adequate attestation of having undergone appropriate treatment to affirm gender identity."

Based on that understanding of the statutes at issue, petitioner contends that, "[b]ecause no evidence supported the denial of petitioner's request to change her legal first name and sex designation to affirm her gender identity as inconsistent with 'the public interest' under ORS 33.410 and ORS 33.460, the circuit exceeded its legal authority in summarily denying the petition."

## II.   STANDARD OF REVIEW

A circuit court's authority under ORS 33.410 and ORS 33.460 is a matter of "statutory construction, and we are called upon to review the trial court's ruling for legal error." *Hollister*, 305 Or App 368, 370, 470 P3d 436 (2020); *State v. Stamper*, 197 Or App 413, 416, 106 P3d 172, *rev den*, 339 Or 230 (2005) ("When the dispositive issue involves the meaning of applicable statutes, we review the court's ruling as a matter of law."). We will accept a trial court's findings of fact if those findings are supported by any evidence in the record. *American Civil Liberties Union v. City of Eugene*, 360 Or 269, 289-90, 380 P3d 281 (2016). A trial court's determination that a change of legal name or sex is inconsistent with the public interest is a legal conclusion, which we review for legal error. *See id.*

### III.   ANALYSIS

We begin our analysis by interpreting the provisions of ORS 33.410 (change of legal name), concluding that a circuit court may deny a change of legal name only if the record contains evidence that the change of legal name is inconsistent with the "public interest"—that is, where the record contains evidence that the change of legal name is sought for some purpose harmful to the wellbeing of the general public, including, but not limited to, fraud, dishonesty, misrepresentation, evading creditors, or interfering with the rights of others. Then, applying that interpretation to this case, we conclude that neither the judgment denying petitioner's change of legal name nor the record contains any indication that petitioner's change of legal name was inconsistent with the public interest. We then turn to interpreting the provisions of ORS 33.460 (change of legal sex), concluding that—as in a change of legal name under ORS 33.410—a circuit court may deny a change of legal sex only if the record allows for a determination that the change of sex is inconsistent with the public interest. Applying that interpretation to this case, we conclude that neither the judgment nor the record contains any indication that petitioner's change of legal sex was inconsistent with the public interest.

In conducting our analysis, we are mindful that we are "responsible for identifying the correct interpretation, whether or not asserted by the parties." *Stull v. Hoke*, 326 Or 72, 77, 948 P2d 722 (1997).

### A.   *ORS 33.410 (Change of Legal Name)*

To interpret a statute, we must "ascertain the meaning of the statute most likely intended by the legislature." *Hollister*, 305 Or App at 372. "We do that by examining the text of the statute in its context, along with relevant legislative history, and, if necessary, canons of construction." *Id.* (internal quotation marks omitted).

The text of ORS 33.410 provides, in its entirety:

"Application for change of name of a person may be heard and determined by the probate court or, if the circuit court is not the probate court, the circuit court if its jurisdiction

has been extended to include this section pursuant to ORS 3.275 of the county in which the person resides. The change of name shall be granted by the court unless the court finds that the change is not consistent with the public interest."

There are only two sentences in ORS 33.410. The first sentence confers upon circuit courts the authority to consider petitions for change of legal name. The second sentence, which is at issue here, provides that a court "shall" grant a change of legal name except where it "finds" that doing so is "not consistent with the public interest."

Three components of the second sentence are particularly relevant here. First, the word "shall" "ordinarily connotes obligation" to do something. *Doyle v. City of Medford*, 347 Or 564, 570, 572, 227 P3d 683 (2010) ("Ordinarily, use of the word 'shall' implies that the legislature intended to create an obligation."); *see also Webster's Third New Int'l Dictionary* 2085 (unabridged ed 2002) (defining "shall," in part, as "must" and "used in laws, regulations, or directives to express what is mandatory"); Office of Legislative Counsel, *Bill Drafting Manual* § 4.4 (2018) ("To impose an obligation to act, use 'shall.'").

Second, the word "find" carries a number of definitions, the most relevant here being "to arrive at (a conclusion) : come to (a finding) : determine and declare (as a verdict in a judicial proceeding)." *Webster's* at 852 (unabridged ed 2002). In the legal context, "the phrase 'to find' is often, perhaps predominantly, used to refer to a specific type of determination by a tribunal: a resolution of *factual* disputes." *Arvidson v. Liberty Northwest Ins. Corp.*, 366 Or 693, 709, 467 P3d 741 (2020) (emphasis in original); *see also Black's Law Dictionary* 780 (3rd ed 1933) (defining "find" as "[t]o announce a conclusion, as the result of judicial investigation, upon a disputed fact or state of facts"). Thus, without undue elaboration, we understand the word "finds" in ORS 33.410 as referring to a trial court arriving at a legal conclusion—either in written or oral form—that, based on facts in the record, a change of legal name is not consistent with the public interest.

Third, the court's obligation to grant a change of legal name is subject to an exception—*viz.*, where granting such a petition is not consistent with "the public interest."

The phrase "the public interest" is not defined in ORS chapter 33, so "we consider the plain, natural, and ordinary meaning of the phrase and consult dictionary definitions of those terms" to discern the meaning intended by the legislature. *State v. Phillips*, 313 Or App 1, 5, 493 P3d 548, *rev den*, 368 Or 788 (2021).

"Public interest" is variously defined as "the well-being of the general public," *The American Heritage College Dictionary* 1106 (3rd ed 1993); "the common welfare," *New Shorter Oxford English Dictionary* 2405 (3rd ed 1993); and "[s]omething in which the public, the community at large, has some pecuniary interest, or some interest by which their legal rights or liabilities are affected," *Black's Law Dictionary* 1460 (3rd ed 1933).[4] Those definitions of "public interest"—read together with the rest of the text at issue, including the words "shall" and "find"—suggest that the legislature intended that a circuit court must grant a change of legal name under ORS 33.410, subject only to an exception where it concludes that doing so would be inconsistent with the welfare or wellbeing of the general public.

Context further confirms and refines that reading of ORS 33.410. As relevant here, context "includes prior versions of the statute, as well as the preexisting common law." *State v. Arnold*, 302 Or App 765, 772, 462 P3d 753 (2020); *Montara Owners Assn. v. La Noue Development, LLC*, 357 Or 333, 341, 353 P3d 563 (2015) ("The context for interpreting a statute's text includes the preexisting common law, and we presume that the legislature was aware of that existing law.").

The current version of ORS 33.410 was enacted in 1975. Or Laws 1975, ch 733, § 1; HB 3275 (1975). Before that, ORS 33.410 (1967) provided, in relevant part:

"No change of name of a person, except a woman upon her marriage or divorce, shall be made *unless for sufficient reasons consistent with the public interest* and satisfactory to the court."

---

[4] "Public interest" is not defined in *Webster's Third New Int'l Dictionary* (unabridged ed 2002).

Or Laws 1967, ch 534, § 11 (emphasis added). The text of ORS 33.410 (1967) was substantially the same as predecessor versions of that statute as far back as 1910. *See* Lord's Oregon Laws, title XLVII, § 7093 (1910) ("No lawful change of the name of a person, except a woman upon her marriage or divorce, shall be made in this state *unless for sufficient reasons consistent with the public interest* \*\*\*[.]" (Emphasis added.)).

The 1910 version of the name-change statute— LOL § 7093—represented the legislature's effort to codify the preexisting common-law principles governing a change of name. Shortly after enactment, the Supreme Court observed that LOL § 7093 "empowers the county court to hear and determine applications for the change of names." *State v. Ford*, 89 Or 121, 125, 172 P 802 (1918). Importantly, the court explained that "[i]t is not believed that section 7093, L. O. L., abrogates the common-law principle" governing name changes; rather, the court opined, LOL § 7093— like a similar 1852 Pennsylvania statute—was enacted "in affirmance and aid of the common law." *Id.* "[A]t common law," the Supreme Court later explained, "a person could change [their] name at will without legal proceedings," and "such proceedings were merely an aid to the establishment of a name change." *Ouellette v. Ouellette*, 245 Or 138, 141, 420 P2d 631 (1966); *see also* Jane M. Draper, *Circumstances Justifying Grant or Denial of Petition to Change Adult's Name*, 79 ALR3d 562, Art I, § 2(a) (2021) ("The common-law privilege of changing one's name at will, in the absence of fraudulent intent, has not been abrogated by present-day name change statutes, but such statutes have been held to be in aid of the individual's common-law right.").

Under the common law, "one may adopt any name he may choose, *so long as such change is not made for fraudulent purposes.*" *Ouellette*, 245 Or at 141 (citing *Mark v. Kahn*, 333 Mass 517, 520, 131 NE2d 758 (1956) (emphasis added) ("[A]t common law a person could change his name at will, without resort to legal proceedings, by merely adopting another name, provided that this was done for an honest purpose.")); *see also* Jay M. Zitter, *Circumstances Justifying Grant or Denial of Petition to Change Transexual or*

*Transgender Individual's Name*, 39 ALR7th Art 9, § 2 (2018) ("At common law, any person may ordinarily change his or her name at will, without any legal proceedings, as long as there is no fraud, misrepresentation, or interference with the rights of others."); 65 CJS *Change of Name Generally; Common-law Right to Change Name* § 21 (2021) ("Under the common law, absent a criminal or fraudulent purpose, an adult can legally and properly change his or her name at will" and "use whatever name the person chooses, as long as the purpose is not to defraud or intentionally confuse and does not interfere with the rights of others.").

Legislative history further confirms and expands upon the common-law background, as set forth above, relating to a circuit court's authority under ORS 33.410 to deny a petition for change of legal name. The current version of ORS 33.410 was enacted by the 1975 legislature through House Bill (HB) 3275 (1975). At a public hearing before a House Committee working on HB 3275, Claudia Burton—a supporter of the bill who testified on behalf of herself and interested women's advocacy groups—explained to the committee that, "at common law, *** anybody may change their own name, at any time, for any reason, so long as it's not for fraud." Tape Recording, House State and Federal Affairs Committee, HB 3275, May 14, 1975, Tape 26, Side B (statement of Claudia Burton). At that hearing, a committee-member asked Ms. Burton about the "public interest" exception in ORS 33.410: "[I]t says 'public interest'—what, generally, is that?" Tape Recording, House State and Federal Affairs Committee, HB 3275, May 14, 1975, Tape 26, Side B (statement of Rep William Wyatt). Ms. Burton replied, "The kinds of reasons that one would use, in my opinion, to deny a name change would be if it was for the purpose of fraud, or for evading creditors, or to adopt a name of a famous celebrity or famous political figure." Tape Recording, House State and Federal Affairs Committee, HB 3275, May 14, 1975, Tape 26, Side B (statement of Claudia Burton).

Based on the foregoing text, context, and legislative history, we conclude that the legislature intended that, under ORS 33.410, a circuit court must grant a change of legal name and may deny a change of legal name only

where it determines, based on evidence in the record, that the name change is inconsistent with the public interest—that is, where the record contains evidence that the change of legal name is sought for some purpose harmful to the wellbeing of the general public, including, but not limited to, fraud, dishonesty, misrepresentation, evading creditors, or interfering with the rights of others. Further, nothing in that text, context, and legislative history suggests that the mere fact of a petitioner's criminal conviction or incarceration is among the reasons for which ORS 33.410 authorizes a circuit court to deny a change of legal name as "not consistent with the public interest."

Applying that understanding to this case, we conclude that neither the judgment denying petitioner's change of legal name nor the record contains any indication that petitioner's change of legal name was inconsistent with the public interest. Again, the reason stated in the judgment for denying the petition was that it was "not in the public interest for petitioner's name and sex to be legally changed." Yet, the judgment did not explain how that conclusion was supported by anything in the record indicating that petitioner sought to change her name for a purpose harmful to the wellbeing of the general public. Similarly, there is nothing in the record indicating that petitioner sought to change her name for any such purpose. To be sure, the record did contain facts pertaining to petitioner's status as a convicted felon currently in custody with DOC. But we conclude that that alone is not a reason that can justify a circuit court's denial of change of name as "not consistent with the public interest" under ORS 33.410.

In sum, because nothing in the record suggests that petitioner's change of legal name was inconsistent with the public interest—and because the facts in the record pertaining to petitioner's convictions and incarceration are not sufficient to justify denial of a name-change petition—the circuit court erred in denying petitioner's petition for change of legal name as inconsistent with the public interest. Consequently, we vacate the judgment as to the change of legal name and remand to the trial court, where it will have the opportunity to engage in any necessary factfinding and to reconsider petitioner's petition in accordance with this opinion.

B.   *ORS 33.460 (Change of Legal Sex)*

Next, we turn to interpreting ORS 33.460, which pertains to a change of legal sex.[5] The text of ORS 33.460 provides, in its entirety:

> "(1)   Application for legal change of sex of a person may be heard and determined by any circuit court in this state. A circuit court may order a legal change of sex and enter a judgment indicating the change of sex if the individual attests that the individual has undergone surgical, hormonal or other treatment appropriate for the individual for the purpose of affirming gender identity.
>
> "(2)   The court may order a legal change of sex and enter the judgment in the same manner as that provided for change of name of a person under ORS 33.410.
>
> "(3)   Application for simultaneous change of name and sex may be heard and determined by any circuit court in this state. If a person applies for a change of name under ORS 33.410 at the time the person applies for a legal change of sex under this section, the court may order change of name and legal change of sex at the same time and in the same proceeding."

Petitioner's argument centers on the text in subsection (2) providing that a circuit court "may" order and enter a judgment for a change of legal sex "in the same manner as that provided for change of name *** under ORS 33.410."

Petitioner contends that "'may' appears to be mandatory in nature" as used in ORS 33.460, and that, under ORS 33.460, "a circuit court has authority to deny a petition for change of legal sex designation only where the petitioner fails to provide a valid and legally adequate attestation of having undergone appropriate treatment to affirm gender identity."

We disagree with petitioner's interpretation. The word "may," as used in a statute, does not ordinarily impose

---

[5]  We previously interpreted ORS 33.460 in *Hollister*, 305 Or App 368 (2020). In *Hollister*, the issue concerned a circuit court's authority to grant a legal change of sex from male or female to nonbinary. *Id.* at 370. Here, the issue concerns a circuit court's authority to deny a petition for change of sex as "not consistent with the public interest."

a mandatory duty; rather, "'may' generally implies that the legislature intended to create only the authority to act." *Doyle*, 347 Or at 570-71; *see also id.* at 572 ("[T]he word 'may,' *** ordinarily connotes authority or discretion."); *Friends of the Columbia Gorge v. Columbia River*, 346 Or 415, 426-27, 212 P3d 1243 (2009) ("As this court has stated in the statutory context, in ordinary usage, 'shall' creates a mandatory duty, while 'may' creates only authority to act." (Brackets and internal quotation marks omitted.)); *Nibler v. Dept. of Transportation*, 338 Or 19, 26, 105 P3d 360 (2005) ("[T]he word 'may' ordinarily denotes permission or the authority to do something."); Office of Legislative Counsel, *Bill Drafting Manual* § 4.4 (2018) ("To confer a right, power or privilege, use 'may.' Do not use *** 'may' to impose a duty.").

It is true, as petitioner contends, that the plain text of ORS 33.460 conditions a change of legal sex on a petitioner's attestation that they have "undergone surgical, hormonal or other treatment appropriate for the individual for the purpose of affirming gender identity." ORS 33.460(1). It is also true that, in certain cases, where doing so is "necessary to carry out the intention of the legislative body, it is proper to construe the word 'may' as meaning 'shall.'" *Local 1724B v. Bd. of Cty. Com., Lane Cty.*, 5 Or App 81, 85, 482 P2d 764 (1971). Here, however, we are not persuaded that this is one of those cases; nothing in the text, context, and legislative history of ORS 33.460 persuades us that the legislature intended "may" to carry anything other than its ordinary meaning when it approved the text of ORS 33.460, "which is, in the end, the best indication of the legislature's intent." *State v. Walker*, 356 Or 4, 22, 333 P3d 316 (2014); *State v. Gaines*, 346 Or 160, 171, 206 P3d 1042 (2009) ("[T]here is no more persuasive evidence of the intent of the legislature than the words by which the legislature undertook to give expression to its wishes," as "[o]nly the text of a statute receives the consideration and approval of a majority of the members of the legislature." (Internal quotation marks omitted.)). Consequently, as used in ORS 33.460(2), we do not understand "may" as imposing an *obligation* to order a change of legal sex as petitioner contends; rather, we understand it as conferring *authority* upon circuit courts to order a change of legal sex.

Although we understand "may," as used in the text of ORS 33.460(2), as conferring authority upon circuit courts to order or deny a change of legal sex, that "text should not be read in isolation but must be considered in context," which includes "other provisions of the same statute" and related statutes. *Vsetecka v. Safeway Stores, Inc.*, 337 Or 502, 508, 98 P3d 1116 (2004). Considered in context, we think that a circuit court's authority to order or deny a sex change is limited by the same "public interest" standard articulated above that applies to a change of legal name under ORS 33.410.

As relevant here, ORS 33.460(2) explicitly provides that a court may order a change of legal sex "in the same manner as that provided for change of name * * * under ORS 33.410." As stated above, ORS 33.410 contains only two sentences. The first sentence confers upon circuit courts the authority to grant a change of legal name. *See* ORS 33.410 ("Application for change of name of a person may be heard and determined by * * * the circuit court[.]"). The second sentence provides that a petition for "change of name shall be granted by the court unless the court finds that the change is not consistent with the public interest." ORS 33.410. We do not think it plausible to interpret the "in the same manner as" phrase in ORS 33.460(2) as referring to the conferral of authority in the first sentence of ORS 33.410; that interpretation would render superfluous the virtually identical phrase contained in ORS 33.460(1) itself, which provides, "Application for legal change of sex of a person may be heard and determined by any circuit court in this state." As this court has explained, "[w]e will not construe a statute in a way that renders its provisions superfluous. *Keller v. SAIF*, 175 Or App 78, 82, 27 P3d 1064 (2001), *rev den*, 333 Or 260 (2002) (citing ORS 174.010).

Instead, a more plausible interpretation is that the "in the same manner as" phrase in ORS 33.460(2) refers to and incorporates the "public interest" standard provided in the second sentence of ORS 33.410. Again, that sentence provides, "The change of name shall be granted by the court unless the court finds that the change is not consistent with the public interest." ORS 33.410. Thus, reading the "in the

same manner as" phrase in ORS 33.460 in conjunction with the "public interest" standard in the second sentence of ORS 33.410, we understand ORS 33.460 to operate as follows: If a petitioner attests to having "undergone surgical, hormonal or other treatment appropriate for the individual for the purpose of affirming gender identity," then the circuit court has the authority to order (or deny) a change of legal sex "in the same manner as" provided in the second sentence of ORS 33.410, under which the court's authority to deny a petition is limited to circumstances where the change of legal sex is inconsistent with the public interest—*i.e.*, where the record contains evidence that the change of legal sex is sought for some purpose harmful to the wellbeing of the general public, including, but not limited to, fraud, dishonesty, misrepresentation, evading creditors, or interfering with the rights of others.

If the "in the same manner as" phrase in ORS 33.460(2) did not incorporate the "public interest" standard for denying a petition provided in ORS 33.410, then ORS 33.460 would create a seemingly standardless authorization for circuit courts to deny petitions for change of sex. In contrast, understanding the "in the same manner as" phrase in ORS 33.460(2) as incorporating the "public interest" standard set forth in ORS 33.410 imposes a meaningful limitation on the circumstances justifying a court's denial of a petition for change of sex that is consistent with the legislature's intent as evidenced by both the text and context of ORS 33.460.

Legislative history further supports understanding ORS 33.460 as incorporating the "public interest" standard that applies to a change of legal name. Originally, ORS 33.460 was enacted by the 1981 legislature as part of House Bill 3098. Or Laws 1981, ch 221, § 1; HB 3098 (1981). HB 3098 was introduced by Representative May Yih on behalf of a transgender constituent and explained that the bill would "allow for a change of sex of the person and, if applicable, change of name." Tape Recording, House Committee on Judiciary, HB 3098, Apr 13, 1981, Tape 251, Side A (statement of Rep May Yih). Representative Yih further explained that the bill would "provide for a change [of legal sex] when a court order is issued, just as we allow a change of names."

Exhibit A, Senate Committee on Justice, HB 3098, June 4, 1981 (testimony of Rep May Yih). Representative Springer—a member of the committee working on HB 3098—confirmed during a work session that the change of legal sex procedure would provide for the same requirements "as in the name-change procedure." Tape Recording, House Committee on Judiciary, HB 3098, Apr 13, 1981, Tape 253, Side A (statement of Rep Dick Springer). Additionally, Carol Herzog—a legislative representative for ACLU Portland and supporter of HB 3098—testified that the bill "would allow a person to obtain legal documentation of change of sex in a manner similar to that provided for legal change of name." Exhibit B, Senate Committee on Justice, June 4, 1981 (testimony of Carol Herzog, ACLU).[6]

In light of the foregoing text, context, and legislative history, we conclude that the legislature intended the "in the same manner as" phrase in ORS 33.460 to operate like a change of legal name under ORS 33.410 by incorporating that statute's "public interest" standard. In other words, under ORS 33.460, when a petitioner submits an attestation and application for a change of legal sex, the circuit court has the authority to order (or deny) a change of legal sex, but the court's authority to deny a change of legal sex is limited—like a change of legal name under ORS 33.410— to circumstances where the record contains evidence that change of legal sex is inconsistent with the public interest— that is, where the record contains evidence that the change of legal sex is sought for some purpose harmful to the well-being of the general public, including, but not limited to, fraud, dishonesty, misrepresentation, evading creditors, or interfering with the rights of others.

Applying that understanding to this case, we conclude that neither the judgment denying petitioner's change of legal name nor the record contains any indication that

---

[6] The text of ORS 33.460 has been amended since 1981—most notably, to remove the requirement that petitioners undergo a gender-affirming surgery, *see* Or Laws 2013, ch 366, § 52, and to remove the requirement that petitioners provide public notice of their change of legal sex, *see* Or Laws 2017, ch 100, §§ 3-4. However, none of those amendments affected the "in the same manner as" phrase in ORS 33.460 at issue here, nor does anything in the legislative history suggest to us that the legislature intended to do so.

petitioner's change of legal sex was inconsistent with the public interest. Once again, the reason stated in the judgment for denying the petition was that it was "not in the public interest for petitioner's name and sex to be legally changed." Yet, no evidence in the record indicates that petitioner sought to change her legal sex for any reason other than to align her legal sex with her gender identity or that she sought to change her legal sex for a purpose harmful to the wellbeing of the general public. Moreover, though the record showed that petitioner had been convicted and incarcerated, we conclude that those are not among the reasons for which a circuit court may deny a petition for change of legal sex (or change of legal name) as "inconsistent with the public interest." Therefore, the circuit court erred in denying petitioner's petition for change of legal sex as inconsistent with the public interest. Consequently, we vacate the judgment as to the change of legal sex and remand to the trial court, where it will have the opportunity to engage in any necessary factfinding and to reconsider petitioner's petition in accordance with this opinion.

## CONCLUSION

Because neither the circuit court's judgment denying petitioner's change of legal name and sex nor the record contains any indication that petitioner's change of legal name and sex was inconsistent with the public interest, we vacate the judgment and remand.

Vacated and remanded.